MARTIN C. KASH v. STATE OF INDIANA.

[No. 2-1074A246. Filed November 24, 1976. Rehearing denied January 5, 1976. Transfer denied September 13, 1976.]

*Frank E. Spencer*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Walter F. Lockhart*, Deputy Attorney General, for appellee.

STATON, P.J.—Martin Kash was convicted of theft.[1] He was fined $5,000.00 and sentenced to imprisonment for a period of not less than one (1) year nor more than ten (10) years.[2] His appeal raises these issues:

ISSUE ONE:    Was the evidence sufficient to support his conviction?

ISSUE TWO:    Did the trial court err by denying his motion for directed verdict?

1. IC 1971, 35-17-5-3(1)(a) and (2)(a), Ind. Ann. Stat. § 10-3030 (1)(a) and (2)(a) (Burns Supp. 1975).

2. IC 1971, 35-17-5-12(3), Ind. Ann. Stat. § 10-3039(3) (Burns Supp. 1975).

ISSUE THREE: Did the trial court err by allowing the State to pass an exhibit to the jury after the State had rested?

We affirm.

I.

*Sufficiency and Directed Verdict*

When the sufficiency of circumstantial evidence is questioned, this Court must carefully examine the evidence most favorable to the State, not to determine whether every reasonable hypothesis of innocence is overcome, but to determine whether reasonable persons could form an inference with regard to each material element of the offense so as to ascertain defendant's guilt beyond a reasonable doubt. *McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554; *Traylor* v. *State* (1975), 164 Ind. App. 50, 326 N.E.2d 614.

A judgment of acquittal pursuant to TR. 50 is proper only when there is a total absence of substantial evidence of probative value, either directly or by reasonable inference, with respect to an essential element of the offense. *Birkla* v. *State* (1975), 263 Ind. 37, 323 N.E.2d 645; *Hubble* v. *State* (1973), 260 Ind. 655, 299 N.E.2d 612.

The evidence viewed in the light most favorable to the State is that, in December 1971, Travel Trailers, Inc., was a corporation engaged in the business of selling recreational vehicles in Danville, Illinois. Julian Yudin, president of Travel Trailers, testified that when he left the Travel Trailers lot on December 15, 1971, a 1972 Coachman Lamplighter pickup camper, serial number 89125987, valued at $2,500.00, was part of the inventory and on the sales lot in Danville. When Yudin arrived at the lot the next day, December 16, the camper was missing.

Max Hudson, a partner in Ray Albert's Auto Sales in Indianapolis, Indiana, testified that he talked to Kash in December, 1971. At that time, there was one camper on

Albert's lot. Hudson did not know the exact name of the camper but stated that it was the kind that went on the back of a truck. Hudson stated that he did not think that Kash placed the camper on the lot, but he understood that the camper was there on consignment and that he was to pay the price, less a retained commission, to Kash if the camper was sold. Kash told Hudson the amount of money he wanted for the camper. Hudson "was told" that Kash owned the camper, but Hudson could not remember who told him.

Kenneth McClain, a salesman for Jerry Alderman Ford in Indianapolis, Indiana, testified that before Christmas in December 1971 he had talked to Kash, who said he had a camper he would like to trade in on a truck. McClain told Kash that he could not take the camper in trade, but that he would try to sell it for $2,500.00. Kash told McClain that the camper was at Albert's car lot.

The day after McClain talked to Kash, McClain took two potential buyers, Martin Hazen and Larry Cutsinger, to Albert's lot to see the camper. There was still only one camper on Albert's lot. Hazen and Cutsinger decided to buy it for $2,000.00, and Hazen took $2,000.00 in cash to McClain and requested a receipt. McClain typed a receipt[3] and gave it to Kash for a signature. Kash took the receipt and returned it later signed by "Fred Hughes," whose identity was not established at the trial. McClain asked Kash why Kash's name was not on the receipt, and Kash replied that "he did not want his name on it . . . couldn't afford it or something." McClain gave the $2,000.00 cash to Kash and the receipt to Hazen.

After completion of the sale, the camper was delivered to Cutsinger's home. On April 14, 1972, Sgt. Paul Harmon of the

---

3. The "receipt" stated:
"This is to certified that there is no leins or encumbrances against 1971 coachman 11ft. truck camper. Also that I, the under signed have no further interest, or money due." [sic]

Indianapolis Police Department found a 1972 Coachman Lamplighter camper at Cutsinger's home and discovered that the serial number 89125987 matched that of the Coachman camper missing from Travel Trailers in Danville, Illinois. Cutsinger testified that the camper retrieved by Sgt. Harmon was the camper he and Hazen purchased through McClain in December 1971.

Julian Yudin of Travel Trailers testified that he met Kash for the first time the week prior to trial. Kash went to Yudin's office in Danville, identified himself and asked Yudin not to answer the summons to appear at this trial. Kash said he wanted to pay for the camper or compensate Travel Trailers for the loss of the camper.

The State had the burden of proving beyond a reasonable doubt that defendant (1) knowingly (2) obtained or exerted control over the camper owned by Travel Trailers (3) without authorization of Travel Trailers and (4) with the intent to deprive Travel Trailers of the use and benefit of the property. *See Sutton* v. *State* (1972), 258 Ind. 175, 279 N.E.2d 802; *Winston* v. *State* (1975), 164 Ind. App. 85, 326 N.E.2d 592.[4]

We conclude that there was sufficient evidence from which the jury could have inferred beyond a reasonable doubt that Kash was guilty. The jury could have found that Kash knowingly exerted unauthorized control over the camper from the evidence of Kash's role in the sale of the camper, his unwillingness to have his name on the "receipt," his offer to pay for the camper, and his attempt to convince Yudin not to answer the subpoena to appear at trial. The jury could reasonably have inferred intent to deprive from the fact of unauthorized control and the totality of the circumstances surrounding the case. *Tuggle* v. *State* (1969), 253

4. See the statutory definitions of these elements at IC 1971, 35-17-5-13(8), (10), (13), Ind. Ann. Stat. § 10-3040(8), (10), (13) (Burns Supp. 1975).

Ind. 279, 252 N.E.2d 796; *Shank* v. *State* (1972), 154 Ind. App. 147, 289 N.E.2d 315.

From the evidence and reasonable inferences therefrom, we conclude that the State presented substantial evidence of probative value on all the elements of the offense from which the jury could find guilt beyond a reasonable doubt. Thus, Kash's motion for a directed verdict was properly overruled.

## II.

### *Exhibit*

The third issue raised by defendant is that the trial court committed reversible error by allowing the State to reopen its case and pass an exhibit to the jury.[5] Whether or not the trial court allows a party to reopen its case after the party has rested is a matter of judicial discretion. Kash must demonstrate that the trial judge clearly abused that discretion. *Warrenburg* v. *State* (1973), 260 Ind. 572, 298 N.E.2d 434; *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738; *Maxey* v. *State* (1969), 251 Ind. 645, 244 N.E.2d 650, *cert. denied*, 397 U.S. 949, 90 S.Ct. 969, 25 L.Ed. 2d 130 (1970).

The exhibit was a "receipt" that referred to a 1971, 11 ft. Coachman camper.[6] When the exhibit was offered, the testimony had referred only to a 1972 Coachman camper. The trial judge admitted the exhibit into evidence subject to the condition that the State connect the two campers. Immediately after the State rested, the State realized that the court had not made a final ruling on the exhibit, and the State asked to "unrest." Kash contends that to allow the jury to view the exhibit all by itself surely gave

5. The defendant appears to argue that the State did not even reopen its case, probably because nowhere in the record does the word reopen appear. However, the State did ask to unrest and the trial court consented, and this, we conclude, is equivalent to reopening.

6. See note 3 *supra*.

it undue prominence. The "receipt" was the only exhibit in the case; whenever it was viewed, it would have been viewed all by itself. Since Kash has not demonstrated that he was prejudiced by the trial court's reopening of the State's case, we find no abuse of discretion.

The judgment of the trial court should be and hereby is affirmed.

Hoffman, J., and Garrard, J., concur.

NOTE.—Reported at 337 N.E.2d 573.