Douglas T. MAXWELL, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 3–1279A337.

Court of Appeals of Indiana, Third District.

July 28, 1980.

Walter J. Alvarez, Merrillville, for appellant.

Theodore L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Douglas T. Maxwell (Maxwell) was found guilty by a jury of Burglary, Class B,[1] and sentenced for the determinate period of ten years. Upon appeal Maxwell urges five issues for our review:

(1) Whether the trial court erred in refusing to submit a jury instruction upon a lesser included offense;

(2) Whether the trial court erred in permitting the State to reopen its case for the purpose of admitting evidence;

(3) Whether the trial court erred in admitting testimony concerning certain oral statements made by Maxwell;

(4) Whether the trial court erred in requiring Maxwell to demonstrate the wearing of a gun and holster; and,

(5) Whether the trial court erred in finding sufficient foundation to admit a flashlight and screwdriver into evidence.

We affirm.

## I.

### The Evidence

The evidence as presented at trial follows: Juanita Vasquez testified that she was at home about 8:30 p.m. on November 30, 1978 when she heard a scraping sound at her rear door and called the police. Officer Callas—a policeman of the City of East Chicago—testified that he was on patrol on the evening of November 30, 1978 and that he received a burglary in process report at approximately 8:30 p.m. Officer Callas pulled into the alley next to the home of Mrs. Vasquez and observed a man with his arm sticking in through a partially broken glass panel of Vasquez's rear door. Officer Callas noted that he was a black man, six foot three or four inches, of thin build and wearing glasses, a wool hat and a three-quarters length dark brown coat. Officer Callas testified that he got a clear view of the man's face, who then ran into the yard of the house carrying something shiny in his hand. Officer Callas gave chase around the house and found the man in the custody of police officers Paynes and Johnson. Officer Callas identified the man at trial as the defendant, Maxwell.

Officer Paynes testified that he was an East Chicago police officer on duty on the evening of November 30, 1978 when he received a burglary in process report at approximately 8:20 p.m. At that time, officer Paynes was accompanied by officers Flores and Johnson. These three officers proceeded to the Vasquez residence and upon their arrival saw a man running through the yard. The officers yelled that they were police but the man continued running while reaching inside his coat. The officers fired at least one shot and the man slipped and fell down. The officers thereupon caught the man who had his hand inside his coat on a .357 magnum gun with an eight inch barrel. The gun was loaded with six live rounds and in a holster under the man's left armpit. Officer Paynes identified the man as the defendant Maxwell.

The Vasquez yard was searched by the police officers and a flashlight and screwdriver were found. Both officer Callas and Mrs. Vasquez testified that there were pry marks on the back door of the Vasquez house and that the glass had been broken.

1. Ind.Code § 35–43–2–1 (Burns Code Ed.).

Mrs. Vasquez also testified that although she did not know whether the screwdriver and flashlight which were found in her yard belonged to neighbors, she did know that they did not belong to her. Both the screwdriver and flashlight were introduced into evidence.

Detective Bach—also of the East Chicago Police—testified that he was assigned to Maxwell's case after he came on duty at 8:00 a.m. on the morning following Maxwell's arrest, December 1, 1978. At approximately 9:00 a.m. that morning, officer Bach got Maxwell out of lock-up, took him to the interrogation room and presented him with a *Miranda*[2] form. Officer Bach asked him if he could read and whether he understood the form. Maxwell answered in the affirmative to both questions. Then officer Bach read the *Miranda* form to Maxwell. Maxwell signed the form and said he would talk to officer Bach but that he would make no written statements without a lawyer. According to the *Miranda* form and officer Bach's testimony, this procedure took seven minutes. Then, after reading the arrest report and telling Maxwell a summary of what he had read, officer Bach asked Maxwell what happened and Maxwell stated: "You know what happened." Officer Bach again asked "what happened" and "why," and Maxwell indicated that he needed money. Officer Bach further asked Maxwell if he had seen the gun taken from him at the time of his arrest. Maxwell replied "Yes," that he had purchased the gun for "two smokes" from "two dudes" on the street. This interrogation occurred twelve to thirteen hours after Maxwell's arrest and prior to his being taken before a magistrate. Over Maxwell's objection, officer Bach was allowed to testify to the statements made by Maxwell during the interrogation.

After the testimony of officer Bach, the State rested. Maxwell moved for a directed verdict which was denied. The State then moved to re-open its case in chief for the sole purpose of introducing the gun and holster into evidence. Over Maxwell's objection, the trial court allowed the State to introduce the gun and holster into evidence. Maxwell then took the stand and testified that on the night of his arrest a "gambler" friend called him at home in Gary, Indiana and wanted Maxwell to pick him up at a restaurant in East Chicago. Maxwell testified that he was unfamiliar with East Chicago and parked one block west of the street where the restaurant was located—near the Vasquez residence. Maxwell further testified that he met his friend and that as they returned to his car the area was covered with police. Maxwell's friend—being a gambler—"took off" and left Maxwell alone. At that time Maxwell was proceeding to his car but was surrounded by police and then arrested. Maxwell testified that, contrary to the police officers' statements, he was wearing a multicolored serape and a black long sleeve sweater. Maxwell also testified that the police were "framing" him and denied making any statements to officer Bach the morning following his arrest. Upon cross examination, the trial court granted the State's request that Maxwell wear the holster with the gun in it. Over his objection, Maxwell then proceeded to demonstrate the wearing of the holster and gun.

Maxwell presented no other evidence and rested. The jury found Maxwell guilty of Burglary, a Class B felony, and the trial court sentenced him to ten years.

## II.

### Jury Instruction

Maxwell's first contention is that the trial court committed reversible error by refusing to give a jury instruction upon the lesser included offense of attempted theft. Whether a jury instruction upon a lesser included offense should be given was clearly set forth in *Roddy v. State* (1979), Ind.App., 394 N.E.2d 1098, and we follow the methodology therein prescribed.[3]

---

2. *See, Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

3. This methodology is set out in *Roddy, supra,* in footnote 8, 394 N.E.2d at 1103, relying upon

The charging information against Maxwell states, in pertinent part, that Maxwell did:

"feloniously break and enter the building or structure of another person, to-wit: JUANITA VASQUEZ, with intent to then and there and thereby to commit a felony in it, to-wit: to unlawfully, feloniously and knowingly or intentionally exert unauthorized control over the property of JUANITA VASQUEZ, and without the consent of the said JUANITA VASQUEZ, by obtaining, taking, carrying, driving or leading away the said property with intent to deprive the said JUANITA VASQUEZ of the value or use of the said property, and the said DOUGLAS T. MAXWELL was then and there unlawfully and feloniously armed with a deadly weapon, to-wit: a pistol, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

The elements of Burglary, Class B, found at IC 35–43–2–1 (Burns Code Ed.) are as follows: (1) breaking; (2) entering; (3) a building or structure; (4) of another person; (5) with the intent to commit a felony in it; and, (6) armed with a deadly weapon or if the building or structure is a dwelling. The elements of attempted theft as found in IC 35–41–5–1 and –43–4–4 (Burns Code Ed. & Supp. 1979) are as follows: (1) acting with the culpability required of theft; and, (2) engaging in conduct that constitutes a substantial step toward the a) knowingly or intentionally, b) exerting control over property, c) of another person, d) where the control is unauthorized, and e) with the intent to deprive the other person of any part of the use or value of such property.

STEP ONE: Pursuant to the charging information every essential element of the lesser offense (attempted theft) was allegedly committed during the course of the charged crime (in charging information); and, each essential element of the lesser offense constitutes an essential element of the greater offense (burglary while armed with a deadly weapon) as allegedly commit-

the Indiana Supreme Court case of *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208:

"For purposes of clarity, we here capsulize the entire two-step methodology which is employed to determine whether a defendant can properly be convicted of a lesser offense:
"I.  STEP ONE
A.  *Purpose:* To ascertain whether the lesser offense is "included" within the crime charged.
B.  *Methodology:*
1) Examine the statutes which define the two offenses, together with the allegations of fact contained in the charging instrument.
2) Determine:
a) Whether every essential element of the lesser offense was allegedly committed during the course of the charged crime?  *and*
b) Whether each essential element of the lesser offense constitutes an essential element of the greater offense, as it was allegedly committed?  *and*
* c) Whether a conviction of the charged offense requires proof of an element additional to those which comprise the lesser offense?
* Effective October 1, 1977, an included offense may be comprised of *all* the elements which comprise the greater offense.  *See* footnote 11, *infra.*
3) If:
a) All conditions are satisfied, subject the *included* offense to step two.

b) If any of the above conditions are not satisfied, the inquiry ends.  A defendant *could not be properly convicted* of the lesser offense.
"II.  STEP TWO
A.  *Purpose:* To insure that the instructions and form verdicts which are given to the jury conform to the evidence.
B.  *Methodology:*
1) Examine the evidence which tends to prove or disprove *the commission of the ele*ments which comprise the charged and included offenses.
2) Determine:
a) Whether there is evidence of probative value to establish the defendant's commission of all elements of the included offense?
i) If not, no instruction and form of verdict on the included offense should be given.  The inquiry ends.
ii) If so, subject the included offense to step 2(b) of the inquiry.
b) Whether the evidence reveals a "serious dispute" regarding the defendant's commission of the element(s) which distinguish the greater and lesser included offense?
i) If not, no instruction and form of verdict on the included offense should be given to the jury.
ii) If so, an instruction and form of verdict on the lesser included offense should be given to the jury."

ted. Therefore, attempted theft was a lesser included offense. *Roddy, supra*; IC 35–41–1–2 (Burns Code Ed.).[4]

STEP TWO: There is evidence of probative value to establish the defendant's commission of all elements of the lesser included offense; but, the evidence reveals no serious dispute regarding the defendant's commission of the elements which distinguish the greater from the lesser included offense. In fact, the evidence supports a finding that Maxwell committed a burglary or no crime at all. *Lawrence v. State, supra*; *Hester v. State* (1974), 262 Ind. 284, 315 N.E.2d 351.

Therefore, under the *Roddy* methodology, no instruction upon the lesser included offense of attempted theft should have been given and the trial court correctly denied Maxwell's request.

### III.

### State Reopened Case

■ Maxwell's second allegation is that the trial court committed reversible error by allowing the State to reopen its case for the purpose of introducing into evidence the gun and holster. Maxwell argues as follows: Maxwell was charged with Burglary, Class B felony, which is defined in IC 35–43–2–1 (Burns Code Ed.) as:

"A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling, and a Class A felony if it results in either bodily injury or serious bodily injury to any other person."

Since Vasquez's testimony would establish by inference that the building was a dwelling, proof that Maxwell was armed was not necessary for conviction of the Class B felony. Maxwell therefore contends that the introduction of the gun and holster was "unnecessary" or "immaterial" and "clearly inflammatory and calculated to unfairly prejudice the jury" and the admission of such evidence constituted an abuse of the trial court's discretion.

Whether there was evidence of the Vasquez residence being a dwelling is not relevant to the issue at hand. Burglary as a Class B felony is a burglary of a "dwelling" or a burglary "while armed with a deadly weapon." Maxwell was charged with having acted to "break and enter the building or structure of another, to-wit: Juanita Vasquez . . . [while] armed with a deadly weapon, to-wit: a pistol. . . ." Maxwell was not charged with the breaking and entering of a dwelling. Therefore, Maxwell's specious argument erroneously addresses the statute and ignores the charging information.

■ Further, we note that whether the trial court allows the State to reopen its case after the State has rested is a matter of judicial discretion and for reversible error the defendant must establish that the trial judge clearly abused that discretion. *See, e. g., Kash v. State* (1975), 166 Ind.App. 666, 337 N.E.2d 573, and the cases cited therein. The defendant must also designate specifically how he was prejudiced by the reopening of the State's case. *Jones v. State* (1978), Ind., 381 N.E.2d 1064. Assuming *arguendo* that the trial judge did abuse his discretion, Maxwell fails to establish any

---

4. *Roddy* was decided under the old definition of included offenses. IC 35–1–39–2 (1971) (repealed 1977). "Included offense" has been redefined in IC 35–41–1–2 (Burns Code Ed.):

"'Included offense' means an offense that:
(1) Is established by proof of *the same material elements or less than all the material elements* required to establish the commission of the offense charged;
(2) Consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) Differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is *required to establish its commission*." (Emphasis added.).

As pointed out in *Roddy, supra*, footnote 11 at 1105, the new definition eliminated the work "necessarily" from included offense with the result that the lesser offense need not be composed of fewer elements than the offense charged, as was true under the old definition.

prejudice. At the juncture of the trial where the gun and holster were introduced into evidence, officer Paynes—in the presence of the jury—had already identified the gun and holster as the ones worn by Maxwell the night of his arrest. Therefore the gun and holster had previously been in front of the jury and identified with Maxwell though not formally introduced into evidence. Upon these facts, we fail to find any prejudice to Maxwell by allowing the State to reopen its case merely to introduce the gun and holster into evidence. Finding no prejudice, there was no reversible error.

## IV.

### Admission of Testimony

Thirdly, Maxwell contends that the trial court committed reversible error by admitting officer Bach's testimony concerning Maxwell's incriminating statements made during interrogation the morning after his arrest. Maxwell contends it was error to admit this testimony because he did not understand the consequences of making the statements and that the police failed to comply with IC 35–5–5–3 (Burns Code Ed.) which states:

"In any criminal prosecution by the state of Indiana, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of the delay in bringing such person before a judge if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six [6] hours immediately following his arrest or other detention:

"Provided, That the time limitation contained in this section shall not apply in any case in which the delay in bringing

such person before a judge beyond such six [6] hour period is found by the trial judge to be reasonable, considering the means of transportation and the distance to be traveled to the nearest available judge. . . ."

The essence of Maxwell's contention is, therefore, that his incriminating statements were not made "voluntarily." We disagree.

It is to be noted that upon Maxwell's motion at trial the trial court had a hearing out of the presence of the jury of the voluntariness of Maxwell's statements and thereafter ruled officer Bach's testimony concerning the statements was admissible. In reviewing a trial court's determination on the issue of voluntariness of a confession,[5] this Court will neither weigh the evidence nor resolve questions of credibility but will only look to the evidence which supports the trial court's determination. *Kizer v. State* (1979), Ind., 392 N.E.2d 466; *Dowdell v. State* (1978), Ind.App., 374 N.E.2d 540.

If a defendant is fully informed of his rights, a confession given more than six hours after his detention is not per se involuntary. *Dowdell, supra.* Any delay in taking the defendant before a magistrate is but one factor to be considered in the determination of voluntariness. *Pawloski v. State* (1978), Ind., 380 N.E.2d 1230. Although delay is a negative factor in determining admissibility, it must be balanced with all other factors involved. *Carpenter v. State* (1978), Ind., 383 N.E.2d 815.

Maxwell was arrested at 8:30 p. m. and spent the night in the East Chicago police lockup. At 8:00 a. m. the morning following Maxwell's arrest, officer Bach went on duty and was assigned to Maxwell's case. At 9:00 a. m. officer Bach took Maxwell to the interrogation room. Officer Bach testified at the suppression hearing that:

"As soon as he [Maxwell] sat down, I got the [*Miranda*] form, and I asked him to

**5.** IC 35–5–5–5 (Burns Code Ed.) defines "confession":

"As used in this chapter, 'confession' means any confession of guilt of any offense

or any self-incriminating statement made or given orally or in writing."

read it. And presented that to him. I asked him if he understood his rights, and he said, yes. I then read his rights and I said, do you understand it. And he said, yes."

The *Miranda* form, in pertinent part, read as follows:

"1. Before making this statement, I was advised that I have the right to remain silent and that anything I might say may or will be used against me in a court of law.

"2. That I have the right to consult with an attorney of my own choice before saying anything, and that an attorney may be present while I am making any statement or throughout the course of any conversation with any police officer if I so choose.

"3. That I can stop and request an attorney at any time during the course of the taking of any statement or during the course of any such conversations.

"4. That in the course of any conversation I can refuse to answer any further questions and remain silent, thereby terminating the conversation.

"5. That if I cannot hire an attorney, one will be provided for me.

"WAIVER

"I have read the foregoing statement of my rights and I am fully aware of the said rights. I do not desire the services of any attorney at this time and before proceeding with the making of any statement or during the course of any conversation with any police officers, and hereby waive said right. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me to procure any statement or induce any conversation. That the statement I am about to give is the truth and that I give it of my own free will."

Officer Bach asked Maxwell to sign the above form and make a written statement. Maxwell signed and dated the form but stated that he would make no written statement without a lawyer. Soon thereafter, Maxwell made the incriminating statements here in issue.

In addition to the testimony concerning the events leading up to the signing of the *Miranda* form and the incriminating statements, as well as the signed and dated *Miranda* form, the trial court had before it evidence that Maxwell was forty-five years old, knowledgeable of the English language and seemed to be an educated person. This clearly provides sufficient evidence to support the trial court's finding that the statements were made voluntarily even if made after the time period of six hours found in IC 35–5–5–3, *supra* and we affirm its ruling.

## V.

### Demonstration of Holster and Gun

Maxwell's fourth allegation is that the trial court erred in requiring him to wear the holster with the gun in it. Maxwell claims this demonstration was not relevant and that its probative value was outweighed by its prejudicial effect.

Although he admitted wearing the gun and holster the night of his arrest, Maxwell testified that he wore the gun for the purpose of self defense. In furtherance of the cross-examination, the prosecutor forwarded the proposition that the large size of the gun and the placement of the holster made the gun an awkward weapon for self defense and requested that Maxwell don the gun and holster for a demonstration. Over defense counsel's objection, the trial court had Maxwell put on the holster with the gun in it.

Maxwell chose to take the stand and as such became a witness subject to vigorous cross-examination. *Sears v. State* (1972), 258 Ind. 561, 282 N.E.2d 807. For the State to forward a demonstration to impeach and rebut the implications of Maxwell's testimony was quite proper. Additionally, Maxwell was charged with burglary "while armed with a deadly weapon." Therefore, a material element of the crime was being armed with the gun. "Relevance" is the logical tendency of evidence to

prove a material fact and any evidence which connects the defendant to the crime is relevant and admissible. *Walker v. State* (1976), 265 Ind. 8, 349 N.E.2d 161, *cert. denied*, 429 U.S. 943, 97 S.Ct. 363, 50 L.Ed.2d 313. With respect to relevant evidence—that is, evidence tending to prove a material fact—generally the interest of the State in determining the truth will prevail over the undesirable tendency to prejudice. *Lawrence v. State* (1972), 259 Ind. 306, 286 N.E.2d 830; *Boles v. State* (1975), 163 Ind. App. 196, 322 N.E.2d 722. Although the forced demonstration by Maxwell of the wearing of the gun and holster may have had some tendency to prejudice the jury, the relevancy of such evidence outweighs the possible undesirable effect.

The admission of evidence into a criminal trial proceeding is within the sound discretion of the trial court and will not be disturbed upon appeal except for an abuse thereof. *State v. Moore* (1979), Ind.App., 391 N.E.2d 665. Finding no abuse of discretion by the trial court, we uphold its ruling.

## VI.

### Sufficiency of Foundation

Finally, Maxwell contends that there was insufficient foundation laid for the admission of the flashlight and screwdriver into evidence. He specifically contends that there was insufficient showing of possession to tie the two items to him.

Officer Callas testified that after the apprehension, the area around Maxwell was searched and the flashlight and screwdriver were found. Mrs. Vasquez testified that the flashlight and screwdriver which were found in her yard were not hers. Finally, both officer Callas and Mrs. Vasquez testified that there were pry marks on the back door of her residence. Any evidence which legitimately tends to connect the defendant with the charged crime is admissible when only a reasonable inference may be deduced from such evidence. *Poindexter v. State* (1978), 268 Ind. 167, 374 N.E.2d 509. And, generally, the sufficiency of the foundation will go to the weight rather than the admissibility of the evidence. *See, e. g., Holt v. State* (1978), Ind.App., 383 N.E.2d 467. Items useful in the perpetration of a burglary—such as the flashlight and screwdriver—are clearly relevant to a charge of burglary. *See, e. g., Young v. State* (1970), 254 Ind. 379, 260 N.E.2d 572; *Walker v. State* (1968), 250 Ind. 649, 238 N.E.2d 466. Judge Sharp answered an argument of insufficient foundation similar to Maxwell's in *Martin v. State* (1973), 157 Ind.App. 465, 470, 300 N.E.2d 671, 674:

"If the Appellant were charged with possession of burglary tools, he would no doubt have a good argument. However, these are relevant items of physical evidence to provide the jury with the total circumstances from which it could properly determine whether this particular crime was committed. In this context no reversible error was committed in their admission into evidence. . . ."

We affirm the trial court upon all issues.

GARRARD, P. J., concurs.

HOFFMAN, J., concurs in result.