**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Feb 19 2014, 8:22 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL G. MOORE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TYRONE WILBOURN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1306-CR-262 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
The Honorable Michael S. Jensen, Magistrate
Cause No. 49G20-1204-FB-21558

**February 19, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Tyrone Wilbourn appeals his conviction for possession of a firearm by a serious violent felon. Wilbourn raises three issues which we consolidate and restate as:

I.      Whether the admission of evidence related to Wilbourn's prior conviction constituted an abuse of discretion or resulted in fundamental error; and

II.     Whether the evidence is sufficient to sustain his conviction.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On March 30, 2012, Indianapolis Metropolitan Police Sergeant Paul Vanek responded to a dispatch regarding shots fired in the 4200 block of Crittenden Avenue. Officer Vanek drove around Crittenden Avenue looking for persons or shell casings and observed Wilbourn sitting in the driver's seat of a Dodge Durango. Wilbourn had a "haunted look on his face" and his eyes became enlarged. Transcript at 20. Officer Vanek parked behind the Durango, approached Wilbourn, and said: "Hey, can I talk to you for a minute." Id. at 21. Wilbourn responded by stating: "F you, I didn't call the police." Id. Officer Vanek noticed that Wilbourn was wearing a Detroit Tigers hat. Wilbourn then put his vehicle in gear and sped off northbound. Officer Vanek advised control that the vehicle was fleeing the area.

Indianapolis Metropolitan Police Officer Bradley Scott Dow observed the Durango, drove behind it, and activated his emergency lights and siren. Officer Dow identified the license plate of the Durango, which was later determined to belong to Wilbourn's mother. The Durango accelerated and turned off 43rd Street and went south on Evanston. At some point, Officer James Case and Officer Derik Harper joined the

2

pursuit. The Durango then accelerated, "blew the stop sign," and turned westbound onto 42nd Street. Id. at 31. After making further turns and failing to stop for another stop sign, Wilbourn pulled "out to the right side of the road," and Officer Dow along with a few other officers stopped behind Wilbourn's vehicle with their emergency lights and sirens activated. Id. at 34.

Officer Dow then saw the driver's side of the Durango "fly open" and a black male wearing a brown hoodie and carrying a "high powered rifle or an AK-47 saddle type rifle" exit the vehicle and take off running eastbound. Id. at 38. Officer Dow followed the individual until he jumped a privacy fence. Officer Dow gave the control operator a description of the driver of the vehicle and stated that he believed that the individual had an assault rifle. Officer Harper observed that the individual was wearing a Detroit baseball cap and a brown hoodie. A police dog picked up a track and eventually indicated on a bush. The police officers observed Wilbourn behind the bush and ordered him to show his hands and crawl out to them. Wilbourn did not respond, the K-9 officer used his dog, and Wilbourn, wearing a hoodie, crawled out without further incident. The police checked the area and did not recover a weapon of any sort, but removed a nylon handgun holster from Wilbourn's belt and found his Detroit Tigers hat several feet away.

Indianapolis Police Sergeant Gregory Scott arrived at the scene, and Wilbourn stated that he "has been shot thirteen times and he always carries a gun." Id. at 95. Sergeant Scott read Wilbourn his Miranda rights and questioned him "about the holster obviously that he had had on his belt" and asked him where the gun was, and Wilbourn stated that "it's a forty caliber that he keeps in that and that he left it at his girlfriend's

3

that night." Id. at 96. Sergeant Scott inquired about the rifle, and Wilbourn denied knowledge of any rifle. When asked why he ran from the police, Wilbourn stated that "somebody was shootin' at him and he ran from the police because the police won't help if you are being shot at." Id. at 99.

While in jail, Wilbourn made a phone call to a woman and said "[d]id ya'll find it?" Id. at 125. The woman said, "Yes, uh-huh, it wasn't hard to find," and Wilbourn replied, "Yeah, I just threw it, I didn't figure it would be." Id. Wilbourn stated that he was running and hiding, that the police were chasing him, and that he was hiding in the bushes. He also said that the only reason he ran was because of "that thing in the back." Id. at 127. In a second phone call, Wilbourn asked where it was, and the woman said that "it was taken care of, and that Terry came by and picked it up and that it is safe."[1] Id. at 129.

On April 3, 2012, the State charged Wilbourn with Count I, unlawful possession of a firearm by a serious violent felon as a class B felony; Count II, obstruction of justice as a class D felony; Count III, resisting law enforcement as a class D felony; and Count IV, resisting law enforcement as a class A misdemeanor.

On April 10, 2012, the State filed a notice of discovery compliance which indicated that copies of his certified prior conviction for cause number 49G20-0704-FA-062400 ("Cause No. 62400") had been forwarded to defense counsel or made available for review.

---

[1] Indianapolis Police Detective Erika Jones testified that Wilbourn "asked where it was, he never specified as to what it was, but asked where it was." Transcript at 129.

On January 28, 2013, Wilbourn filed a waiver of trial by jury. Before the start of the bench trial on March 4, 2013, the parties discussed a possible plea agreement, and the following exchange occurred:

THE COURT: Any questions about your situation?

[Wilbourn]: Yes, I want to know basically how am I even being charged with serious violent felon.

THE COURT: Well, apparently the State believes that you possessed a firearm and that you have a prior conviction that make you a serious violent felon under the statute and that is Dealing Cocaine.

[Wilbourn]: Dealing cocaine was a violent charge?

THE COURT: Yes, according to the statute that is one of the things contained in the definition of a serious violent felon, its 35-47-4-5. So that's why they believe you have that conviction and that you have a prior – I mean you possessed the gun. Any other questions?

[Wilbourn]: (inaudible).

THE COURT: I'm sorry?

[Wilbourn]: (inaudible) right now.

Id. at 11-12. Wilbourn elected to proceed to trial.

The State presented testimony of several officers as well as phone calls from the jail and photographs. After the State rested, Wilbourn testified that he saw two police cars approaching him quickly without their lights on at first, and that he eventually stopped his car, grabbed a foldable picnic chair because his mother was going to Atlanta the next morning, and ran. Wilbourn also stated that he dropped the chair in his mother's yard because he felt that it was in his way, and that the "thing" referred to in the phone

5

calls was the chair.  Id. at 154.  During redirect examination, he testified that the chair had some money and a small amount of marijuana contained within, that he did not want to "catch a case," and that the chair was to be given to his mother so that she could go on her vacation.  Id. at 169.  Wilbourn then rested.

During closing argument, Wilbourn's counsel admitted the resisting charges and described the "main issue" as "whether or not he knowingly or intentionally possessed a rifle."  Id. at 183.  The court found Wilbourn guilty of Counts I, III, and IV.  The following exchange then occurred regarding Wilbourn's prior conviction:

[Prosecutor]:        Yes, Judge.  I wanted to offer the prior –

THE COURT:        Okay.  Oh, I thought there was a stipulation.

[Prosecutor]:        There is a stipulation.

THE COURT:        Okay.  Do you want to introduce the – oh, okay.

[Prosecutor]:        Yes, I just want the Court to know –

THE COURT:        Any objection to that on the record?  And we'll show
                             that – what number is that, ma'am?

                                        * * * * *

THE REPORTER:  22.

[Prosecutor]:        22, Judge.

THE COURT:        Okay.

[Prosecutor]:        Thank you.

THE COURT:        We will go ahead and incorporate that into the record,
                             even though there was a stipulation he did have a prior
                             conviction.

6

Id. at 188-189. State's Exhibit 22 consists of an abstract of judgment indicating that Wilbourn had been convicted of dealing cocaine as a class B felony in 2008 under Cause No. 62400, as well as the plea agreement, charging information, and probable cause affidavit. The court later sentenced Wilbourn to concurrent sentences of fifteen years for Count I, two years for Count III, and one year for Count IV.

## DISCUSSION

## I.

The first issue is whether the admission of evidence related to Wilbourn's prior conviction constituted an abuse of discretion or resulted in fundamental error. Wilbourn concedes that he did not object to the admission of State's Exhibit 22, but argues that there was no need for him to object because the evidence was closed and the trial court had entered a finding of guilty. In other words, Wilbourn argues that "[t]he proverbial bell had been rung and any attempt to object would have been futile." Appellant's Brief at 6. He asserts that the court had already found him guilty despite no evidence that he was a serious violent felon, and argues that the trial court "clearly believed the parties had stipulated that [he] was a serious violent felon" despite the fact that the defense did not assert and there was no written stipulation by the parties. Id. at 7. He also contends that the admission of Exhibit 22 resulted in fundamental error.

The State argues that Wilbourn did not preserve this issue for review because he did not contest the trial court's understanding that a stipulation of a prior conviction existed or object to the evidence supporting the stipulation, and that even if State's Exhibit 22 was incorrectly admitted, its admission was not fundamental error. The State

7

asserts that Wilbourn had received a certified copy of the prior conviction that the State was alleging as the basis for his serious violent felon allegation only a week after the charge had been filed and had more than sufficient time to be apprised of the prior charges and to prepare any defense. The State also contends that Wilbourn stipulated that he had a prior conviction for dealing cocaine as a class B felony and cites to State's Exhibit 22 as well as the exchange regarding that exhibit following the initial close of evidence.

We observe that while the prosecutor did not explicitly request that the case be reopened after the court found Wilbourn guilty, the prosecutor offered the evidence of the prior conviction, and the court incorporated the exhibit into the record. This is the equivalent of reopening the case. See Kash v. State, 166 Ind. App. 666, 671, 337 N.E.2d 573, 576 (1975) ("The defendant appears to argue that the State did not even reopen its case, probably because nowhere in the record does the word reopen appear. However, the State did ask to unrest and the trial court consented, and this, we conclude, is equivalent to reopening."). Generally, the granting of permission to reopen a case is within the discretion of the trial court and the decision will be reviewed to determine only whether there has been an abuse of that discretion. Ford v. State, 523 N.E.2d 742, 745 (Ind. 1988). A party should be afforded the opportunity to reopen its case to submit evidence which could have been part of its case-in-chief. Id. at 746.

Among the factors which weigh in the exercise of discretion are whether there is any prejudice to the opposing party, whether the party seeking to reopen appears to have rested inadvertently or purposely, the stage of the proceedings at which the request is

made, and whether any real confusion or inconvenience would result from granting the request. Id. at 745-746. Two conditions must be shown to exist to justify a court of appellate jurisdiction in setting aside a ruling made by a trial court in the exercise of judicial discretion: (1) the action complained of must have been unreasonable in light of all attendant circumstances or it must have been clearly untenable or unreasonable; and (2) the action was prejudicial to the rights of the complaining party. Id. at 746. A party should be afforded the opportunity to reopen its case to submit evidence which could have been part of its case-in-chief. Id. The opportunity for a party to reopen its case includes the chance to cure a claimed insufficiency of evidence. Lewis v. State, 406 N.E.2d 1226, 1230 (Ind. Ct. App. 1980) (citing Eskridge v. State, 258 Ind. 363, 281 N.E.2d 490, 493 (1972)). A trial is not a game of technicalities, but one in which the facts and truth are sought. Ford, 523 N.E.2d at 746. "A primary consideration in the determination of whether a party should be permitted to reopen its case is whether the opposing party has adequate opportunity to prepare to rebut the evidence offered." Lee v. State, 439 N.E.2d 603, 604 (Ind. 1982). "[F]or reversible error the defendant must establish that the trial judge clearly abused that discretion" and "must also designate specifically how he was prejudiced by the reopening of the State's case." Maxwell v. State, 408 N.E.2d 158, 163 (Ind. Ct. App. 1980).

To the extent that the case also addresses admission of evidence, we observe that generally we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. Roche v. State, 690 N.E.2d 1115, 1134 (Ind. 1997), reh'g denied. We reverse only where the decision is clearly against the logic and effect of the facts and

9

circumstances. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied. Generally, failure to object to the admission of evidence at trial results in waiver and precludes appellate review unless its admission constitutes fundamental error. Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010), reh'g denied; Cutter v. State, 725 N.E.2d 401, 406 (Ind. 2000), reh'g denied. Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006). It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable and substantial potential for harm." Id.

The State cites to its Exhibit 22 and pages 187 and 188 of the transcript to support its argument that Wilbourn "stipulated that he had a prior conviction for Class B felony Dealing in Cocaine, and therefore, he qualified as a serious violent felon for purposes of Ind. Code Section 35-47-4-5." Appellee's Brief at 14. State's Exhibit 22 does not contain a stipulation. Rather, it contains an abstract of judgment indicating that Wilbourn had been convicted of dealing cocaine as a class B felony in 2008, as well as the plea agreement, charging information, and probable cause affidavit. While pages 187 and 188 reveal that Wilbourn's counsel did not contest the idea that there was a stipulation or object to the incorporation of State's Exhibit 22, the exchange on those pages does not contain an express statement by Wilbourn or his counsel acknowledging that such a stipulation existed.

In light of the foregoing, we turn to the factors utilized in considering whether the trial court abused its discretion in granting the prosecutor permission to reopen the case.

10

With respect to the stage of the proceedings at which the request was made, we observe that this case presents an unusual factual scenario because the State did not introduce the exhibit demonstrating that Wilbourn was a serious violent felon until after closing arguments and after the trial court actually found Wilbourn guilty. We acknowledge that this is a situation that generally results in greater potential for prejudice to the defendant. See Lewis, 406 N.E.2d at 1230 ("[W]e are not confronted here with a situation where the State was permitted to reopen its case after the defense had presented its evidence and rested, a situation with greater potential for prejudice to the defendant."). However, we observe that the case was tried to the court and not a jury, and that the court had discussed Wilbourn's "situation" regarding his prior conviction with him prior to the start of the trial.

To the extent that the factor of whether the party seeking to reopen appears to have rested inadvertently or purposely, we observe that prior to the presentation of Wilbourn's defense, the court asked the prosecutor whether she had any other evidence, and the prosecutor responded: "No, Judge." Transcript at 147. The court then asked if the State rested, and the prosecutor stated: "Yes, Judge." This supports a purposeful act by the State. However, the contentious issue at trial was whether Wilbourn possessed a firearm, and the prosecutor's failure to offer the documents in State's Exhibit 22 prior to the finding of guilt appears to have occurred inadvertently.

With respect to prejudice to Wilbourn or whether any real confusion or inconvenience would result from granting the request, the record reveals that the State provided Wilbourn with notice of the prior conviction. Specifically, the charging

11

information for Count I alleged that Wilbourn had been "convicted of dealing in cocaine in Marion County Superior Court, Criminal Division Room Twenty under cause number 49G200704FA062400 on December 11, 2009," and the State filed a notice of discovery compliance which indicated that copies of his certified prior conviction for Cause No. 62400 had been forwarded to defense counsel or made available for review. Appellant's Appendix at 26. Before the bench trial, Wilbourn asked the trial court how dealing cocaine was a violent charge, and the court explained that Ind. Code § 35-47-4-5 defines dealing cocaine as a serious violent felony. Wilbourn did not dispute the accuracy of State's Exhibit 22 before the trial court nor does he on appeal. He did not seek a continuance to prepare a possible defense or argument regarding the prior conviction, nor does he claim a lack of adequate opportunity to rebut the evidence offered. Wilbourn has not designated prejudice, and based upon the record, we cannot say that he was prejudiced or that any real confusion or inconvenience resulted from granting the request to reopen.

Under the circumstances, we cannot say the action complained of was unreasonable in light of all attendant circumstances or was clearly untenable or that the action was prejudicial to Wilbourn's rights. We also cannot say that Wilbourn demonstrated fundamental error with respect to State's Exhibit 22. See King v. State, 531 N.E.2d 1154, 1161 (Ind. 1988) ("The decision by the trial court permitting the State to reopen its case to present evidence of the date of commission of the second felony was within the scope of its authority and not an abuse of discretion. Appellant was not misled by the failure. He was aware of the dates of commission, conviction and sentencing on

12

the two felonies re-lied upon by the State. As has often been stated, a trial is not a game of technicalities but one in which the facts and truth are sought."); Washington v. State, 273 Ind. 156, 160, 402 N.E.2d 1244, 1247 (1980) (holding that the trial court did not err in allowing the state to reopen its case in part because the witness was listed on the State's revised witness list filed two weeks before the witness testified and the defendant should not have been surprised by the witness); Maxey v. State, 251 Ind. 645, 651, 244 N.E.2d 650, 654 (1969) (rejecting the defendant's argument that the trial court committed reversible error in permitting the state to present additional evidence in order to prove venue after it had rested its case and after the appellant had moved the trial court for a directed verdict and holding that the only detriment to the defense resulted from a more complete presentation of all the facts relating to the crime with which the appellant was charged), cert. denied, 397 U.S. 949, 90 S. Ct. 969 (1970); Griffith v. State, 239 Ind. 321, 323, 157 N.E.2d 191, 192 (1959) ("[E]ven though the court permits a witness to testify during rebuttal regarding a matter which, in fact, is not in rebuttal but is a matter related to the state's case in chief, the irregularity will not be treated as reversible error unless under the circumstances the appellant was prevented from presenting rebuttal evidence thereto. There is no showing in this case that this action of the court in any way prevented appellant from fully presenting his defense.") (internal citations omitted); Hire v. State, 144 Ind. 359, 361, 43 N.E. 312, 313 (Ind. 1896) ("It was within the discretion of the trial court to permit original testimony to be given after appellant had closed his evidence, and appellant had no ground of complaint on that account unless he was refused an opportunity to give evidence in opposition thereto."); Ross v. State, 9 Ind.

13

App. 35, 41, 36 N.E. 167, 169 (1894) ("Some time after the evidence was closed and the argument made, the court permitted the state to introduce evidence of the fact that the appellant was a person of over 14 years of age. There was no error in this. It was but a technical point of proof, and the court did not abuse its discretion by allowing it to be made out of its order. Besides, the court informed the appellant that it would also permit him to introduce testimony upon the subject if he desired to do so. If the appellant desired to procure such testimony, he should have asked for a postponement of the case, if necessary to obtain his evidence in rebuttal. He has not shown himself injured by the adverse ruling.").

II.

The next issue is whether the evidence is sufficient to sustain Wilbourn's conviction for possession of a firearm by a serious violent felon. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. Id. We consider conflicting evidence most favorably to the trial court's ruling. Id. We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. Id. at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. Id.

14

The offense of possession of a firearm by a serious violent felon is governed by Ind. Code § 35-47-4-5, which provides that "[a] serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Class B felony." Ind. Code § 35-47-4-5(a) defines a "serious violent felon" as a person who has been convicted of committing a serious violent felony, and subsection (b) defines a "serious violent felony" as dealing cocaine. The charging information alleged that Wilbourn had a previous conviction for dealing cocaine under Cause No. 62400 and knowingly or intentionally possessed a "firearm, that is: a rifle." Appellant's Appendix at 26. Thus, the State was required to prove beyond a reasonable doubt that Wilbourn had a previous conviction for dealing cocaine and knowingly or intentionally possessed a firearm.

Wilbourn argues that no evidence was offered by the State supporting the allegation that he was a serious violent felon until after the trial court announced its finding of guilt on that count. He also argues that there was no stipulation that he was a serious violent felon offered and there is no evidence that one existed, and that the State failed to prove that he was in unlawful possession of a rifle. Specifically, he asserts that the State "never asked any of the witnesses questions necessary to prove that whatever the officers saw being possessed by Wilbourn was a weapon capable of, designed to or that may readily be converted to expel a projectile by means of an explosion." Appellant's Brief at 11. The State contends that the evidence was sufficient to prove that Wilbourn was a serious violent felon and that he possessed a firearm.

15

To the extent that Wilbourn argues there was no evidence that he was a serious violent felon, we have concluded that Wilbourn has not demonstrated fundamental error or an abuse of discretion with respect to the admission of State's Exhibit 22 which indicates that Wilbourn had been convicted of dealing cocaine as a class B felony which constitutes a serious violent felony. See Ind. Code § 35-47-4-5(b)(23). With respect to whether Wilbourn possessed a weapon, Officer Dow testified that it appeared to him that the driver who exited the Durango "was carrying a high powered rifle or an AK-47 saddle type rifle." Transcript at 38. When asked to describe the weapon, Officer Dow stated: "It's a weapon I'd say two, two and a half feet long. Had a banana style clip which holds the bullets or the rounds in it." Id. Officer Dow later testified that he had specific training on weapons in the Navy and had no problem identifying the particular weapon. Officer Case, who had been a drill sergeant, was SWAT qualified through the Marion County Sheriff's Department, and helped instruct the SWAT school, testified that the individual who exited the Durango had an AK-47 with a brown stock. Specifically, Officer Case explained that AK-47s have a very distinguishable magazine and testified: "I could clearly see that it was an AK-47." Id. at 56. Officer Harper testified that he had weapons training and that the individual in the Durango "ran up the street carrying a[n] AK-47," which is a "very large rifle." Id. at 72, 75. Officer Harper also testified that an AK-47 is a "rifle with a banana clip" and a second handle. Id. at 75. With respect to Wilbourn's testimony that he removed a foldable picnic chair from his vehicle, the trial court stated:

> His story that he – in the midst of fleeing from the police, he took the time to get a chair out, to go to his mother's house when he knew his mother

16

wasn't home, according to his testimony, just so he could throw it somewhere is preposterous. It is ridiculous. It is not worthy of belief.

Id. at 187-188. Based upon the record, we conclude that the State presented evidence of probative value from which a trier of fact could have found Wilbourn guilty beyond a reasonable doubt of possession of a firearm by a serious violent felon.

## CONCLUSION

For the foregoing reasons, we affirm Wilbourn's conviction for possession of a firearm by a serious violent felon.

Affirmed.

ROBB, J., and BARNES, J., concur.