Mack Arthur GORMAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 1183S380.

Supreme Court of Indiana.

May 18, 1984.

Nancy L. Broyles, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of the delivery of a controlled substance, cocaine, in an amount less than three grams. This is a Class B felony. He was sentenced to fourteen (14) years of incarceration.

Prior to trial the State indicated it would not be calling the informant to the stand to testify. Appellant then moved for and was granted a continuance. His motion was predicated upon his surprise that the informant was not being asked to take the stand. Appellant indicated he anticipated offering an entrapment defense and that the informant's testimony was essential to the formulation of that defense.

At that time the name and location of the informant was not made known to the appellant. The informant had assisted in the arrest of twenty-four (24) persons in the Marion County area. The police and the informant determined his safety was at risk in this area, and he was encouraged by the police to leave. He was also informed that he would not be required to testify in this matter. The police took the informant to the bus station where he left for New York in April of 1980. By early February, 1981, appellant was informed of the name of the informant and that the informant was currently incarcerated in a New York state prison. When the matter came to trial in July, the appellant sought another continuance based upon the continued absence of the informant. This was granted and the matter was reset for trial in No-vember of 1981. Trial was held in November and the informant did not testify.

Appellant claims the trial court erred in denying his motion to dismiss premised upon the informant's absence. Appellant contends the informant was a material witness who was unavailable to testify due to the bad faith activities of the State. Appellant relies on *Ortez v. State*, (1975) 165 Ind.App. 678, 333 N.E.2d 838, reh. denied (1975).

Appellant's reliance on *Ortez* is not well placed as there are several distinguishing elements in the case at bar. The most prominent distinguishing factor is that appellant knew the name and location of the witness eight months prior to the time the matter was finally adjudicated whereas in *Ortez* he did not. The statute in effect at the time of appellant's trial was IC 35-6-2-2 [Burns 1979 Repl.]. Under this statute the court may compel a nonresident witness to appear if the state in which the witness resides has a statute which permits this process. New York did have a statute which permitted this process. *See* N.Y. Criminal Code § 650.10 (McKinney 1978 Supp.).

The burden of seeking the court order to compel the informant's appearance was not on the State but on the appellant. At trial appellant's counsel stated he had provided the police and the State with a subponea to compel the appearance of the witness. This presentation to the State and the police created no duty on their part to produce the witness. The burden to properly follow the procedures as outlined in the statute was on appellant and not on the State. The trial court did not err in denying the Motion to Dismiss.

Appellant contends the trial court erred in admitting State's Exhibit One. He contends the State failed to provide a showing of an adequate chain of custody for the exhibit. The exhibit consisted of a tinfoil package containing the cocaine the undercover officer purchased from the appellant on March 6, 1980. The undercover officer testified that after purchasing the drug she got into a car driven by the confidential informant. They drove to a predetermined

location where they met the officer directing the overall investigation, Detective Simmons. She gave the packet to Simmons who placed it in a ziploc plastic bag. The undercover officer and Simmons then drove to the police station where Simmons conducted a field test on the substance in the bag. The results of the test indicated the substance was cocaine. The bag was then resealed. Simmons and the undercover officer dated the bag and placed their initials on the outer edge of the bag. Simmons then placed the bag in the narcotics drop box in the police property room.

Forensic chemist Robert McCurdy testified that Simmons brought him a sealed plastic bag containing the exhibit on January 5, 1981. Simmons told him the materials had not been analyzed and asked if McCurdy could test the substance. McCurdy testified that this was not the usual way materials made their way for analysis. He also indicated that it was unusual for materials to be in the property room and not analyzed for an extended period of time. In the case at bar, ten months elapsed between when Simmons placed the materials in the drop box on March 6, 1980, and the time they were taken to McCurdy for analysis on January 5, 1981.

Following McCurdy's testimony, the State rested. The appellant chose not to present evidence and also rested. The next day the State was allowed to reopen its case. The State recalled Simmons and inquired of him as to the events of January 5, 1981. At that time he recalled the events and his testimony closely tracked that of McCurdy.

Appellant asserts seven factors which he alleges, when taken in combination, created a substantial doubt as to whether the chain of custody was adequate. These factors are: 1) the undercover officer did not date and initial the bag until the materials had been out of her control for a period of time; 2) the long and unexplained delay in accomplishing the analysis on the substance; 3) the failure of Detective Simmons to recall the events of January 5 until he was reminded of the events by the testimony of McCurdy; 4) the unusual manner in which the materials were delivered to McCurdy

for the analysis; 5) the discrepancies between the initial testimony of Simmons and that of McCurdy; 6) the fact that numerous exhibits were collected during the investigation from a wide variety of persons created the great possibility of confusion and misidentification of exhibits; and 7) the fact that one sample collected by the undercover officer from the appellant was field tested positive for cocaine, but that further lab analysis revealed the material was not cocaine but another substance.

The State's burden in an attack on the validity of a chain of custody is to show the continuous whereabouts of the evidence. *Stewart v. State*, (1982) Ind., 442 N.E.2d 1026. The mere possibility the evidence could have been tampered with or that an alteration or substitution could have been accomplished does not make the evidence inadmissible. *Jones v. State*, (1981) Ind., 425 N.E.2d 128. The State is not required to exclude every possibility of tampering. *Everroad v. State*, (1982) Ind., 442 N.E.2d 994, reh. denied (1983). However, when the evidence is fungible, like the evidence in the case at bar, the importance of a proper chain of custody is enhanced. *Smith v. State*, (1983) Ind.App., 452 N.E.2d 160. The proper showing of a chain of custody must give reasonable assurance that the property passed through the hands of the parties in an undisturbed condition. *Moody v. State*, (1983) Ind., 448 N.E.2d 660.

The evidence, including the latter testimony of Simmons, did provide a showing that the packet was in the continuous custody of the police. A reasonable assurance was provided that the packet passed from person to person in an undisturbed condition. We find no error in the trial court's admission of the evidence.

Appellant claims the trial court erred when it permitted the State to reopen its case in chief after both parties had rested. The court permitted the State to ask Detective Simmons "some questions which were omitted on redirect examination." Simmons was questioned concerning the events of January 5 when he took the packet to McCurdy.

■ The granting of permission to reopen a case is within the discretion of the trial court and the decision will be reviewed only to determine whether or not there has been an abuse of that discretion. *Owen v. State,* (1978) 269 Ind. 513, 381 N.E.2d 1235. A party should be afforded the opportunity to reopen its case to submit evidence which could have been part of its case in chief. *Lewis v. State,* (1980) Ind.App., 406 N.E.2d 1226.

■ The trial court established parameters for the questioning and it had the discretionary power to enforce those guidelines. The trial court did not abuse its discretion when it permitted Simmons to testify as to his version of the events of January 5, 1981.

■ Appellant contends the questioning of Simmons, after the case was reopened, was a violation of the court's separation of witnesses order, and thus it was an abuse to permit Simmons to testify. Simmons remained in the courtroom during the testimony of McCurdy. Appellant argues this provided Simmons with the opportunity to discern discrepancies between his testimony and that of McCurdy. Appellant submits this permitted Simmons to conform his second day testimony to that of McCurdy. The trial court has the discretionary power to permit witnesses to testify if the witness has violated the court's separation orders unless one party can show connivancy or procurement on the part of its opponent. *Solomon v. State,* (1982) Ind., 439 N.E.2d 570 (DeBruler, J., dissenting on other grounds). We find the action by the trial court in permitting Simmons to testify in violation of the separation order was not an abuse of discretion.

Appellant argues the practice of permitting a party to reopen its case has its greatest prejudicial impact after both parties have rested before the jury. He suggests the evidence presented in that situation is given greater credence by the jury as it stands out against all other trial testimony. The Court of Appeals in *Lewis v. State,* (1980) Ind.App., 406 N.E.2d 1226, noted this was a situation with great potential for prejudice to the defendant. We agree this is a situation with the potential for abuse. We do not find abuse in the facts of this case. Simmons was not a surprise witness and the testimony offered merely explained a fact already before the court. Appellant was given the opportunity to cross-examine the witness and to call additional witnesses in his behalf. Further, he could have sought a continuance. We find the trial court did not abuse its discretion on this issue.

The trial court is in all things affirmed.

All Justices concur.