**James Robert FORD, Jr., Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 20S00–8704–CR–471.

Supreme Court of Indiana.

June 1, 1988.

Thomas F. Grabb, South Bend, Charles A. Davis, Jr., Nappanee, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Following a jury trial in the Elkhart Circuit Court, Defendant–Appellant James Robert Ford, Jr., was convicted of Rape, a class B felony. He was also found to be a habitual offender. He was sentenced on October 23, 1986 to a term of ten (10) years imprisonment for rape, enhanced by a term of thirty (30) years for the habitual offender finding. He appeals directly to this court raising the following issues for our review:

1. sufficiency of the evidence;

2. alleged error in the denial of Ford's Motion for Judgment on the Evidence at the completion of the State's case during the habitual offender phase of the proceedings; and

3. alleged ineffective assistance of trial counsel.

The facts most favorable to the State show that during the evening of February 22, 1986, Appellant Ford and his seventeen (17) year old cousin A.G. were watching television. A.G.'s mother, sister and brother retired to their upstairs bedrooms for the night. Sometime later while A.G. was washing some clothes, Ford moved next to her, pulled her back and started kissing her. He then jerked her to the floor and kept kissing her. When Ford unzipped her shorts, A.G. slapped his hand and asked for permission to go to the bathroom.

After several minutes A.G. came out of the bathroom and tried to get to the stairwell but Ford grabbed her and pulled her to the floor. A.G. was afraid and could not scream. Ford pulled up A.G.'s bra and blouse and started kissing her breasts. A.G. told him to stop. Ford held A.G.'s arms and licked her vaginal area. A.G. testified it felt like she was being invaded. A.G. tried to push Ford away but could not do so. Ford pulled his trousers down and then placed his penis in her vagina. A.G. stated she was too frightened to talk or scream but she told him not to perform sexual intercourse with her. A.G. stated she attempted to resist but Ford was too big for her to prevent the rape. A.G. was five feet tall and weighed 90 pounds.

A.G. went to her bedroom and eventually fell asleep. The next day, A.G. did not tell her mother about the incident because her mother liked Ford. Instead she went to visit a friend, Kathy Bean. Her friend advised her to report the matter to the police, but A.G. was too afraid. Later that evening A.G. and Bean walked to A.G.'s aunt's home. A.G. told her aunt what had happened the previous evening. A.G.'s aunt advised the victim's mother. The police were then advised and Ford was arrested. A.G. was taken to the hospital and had a pelvic examination performed. The presence of semen was detected in A.G.'s vaginal area.

I

Ford claims the evidence presented at trial was insufficient to support the rape conviction. As a court of review, we do not judge the credibility of witnesses nor reweigh the evidence. Rather, we look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact the verdict will not be overturned. *Loyd v. State,* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Ford urges the evidence is insufficient because the only evidence presented concerning the rape came from the victim. However, the uncorroborated testimony of one witness is sufficient to convict, even if the witness in question is the victim. *Lamb v. State* (1984), Ind., 462 N.E.2d 1025, 1028. Ford argues that since the victim's testimony is equivocal and weak, it may not attain the necessary quality of substantive evidence of probative value. Ford asks this court to re-assess the jury's decision of A.G.'s credibility because he claims her testimony was inconsistent and her actions were illogical. This we will not do. Ford maintains A.G.'s actions were

illogical because she failed to call for help during the rape and failed to escape after he allowed her to go to the bathroom. However, A.G. testified when Ford began the assault she was too scared to scream. When Ford began to unzip her shorts, she slapped his hand in an effort to resist his attack. The physical disparity between Ford, who weighed approximately 190 pounds, and A.G., who weighed 90 pounds, would allow him to easily overpower and intimidate her. Further, A.G. testified that ten minutes after she went into the bathroom, she believed Ford had fallen asleep and thus she exited the bathroom and attempted to reach the stairway to go to her bedroom.

Ford also urges A.G.'s testimony concerning when she changed her underpants was inconsistent. She first testified she had taken them off just before leaving for the hospital, but later testified she removed them when she woke up the next morning. Ford complains A.G.'s testimony is inherently improbable as A.G. failed to tell anyone until nearly twenty-four (24) hours had passed. A.G. testified she was afraid to inform her mother about the incident because her mother was fond of Ford and she did not think her mother would believe her accusations. The day after the rape, A.G. told her friend, then her aunt and the police were eventually informed. These challenges go to the weight of A.G.'s testimony and were questions for the jury to decide.

Ford urges the fact that semen was found in A.G.'s vagina and underwear is not evidence that she had been raped, rather it is only evidence that she had recently been sexually active. While this evidence alone does not prove a rape occurred, it does tend to support A.G.'s testimony. The jury was empowered to determine whether A.G.'s testimony was truthful. In light of the evidence presented, this court defers to the jury's assessment of the victim's credibility and finds sufficient evidence to support the conviction.

## II

Ford claims the trial court abused its discretion by allowing the State to reopen its case-in-chief during the habitual offender phase of the proceeding. Ford contends that since the State failed to introduce written documentary evidence of a prior conviction, there was insufficient proof to convict him of the charge of being a habitual criminal.

The record reveals that after the prosecutor rested his presentation on the habitual offender information, defense counsel moved for judgment on the evidence on the basis that the State had failed to present any written verification of Ford's prior conviction for receiving stolen property in the Whitely County Court on June 25, 1984. However, the State had presented the testimony of John W. Whiteleather, Jr., Whitley County Prosecuting Attorney, concerning the conviction for receiving stolen property. The court did not rule on this motion but instead granted the prosecutor's request to submit certified records of the conviction. Thereafter the State presented certified records of Ford's conviction for receiving stolen property in the Whitley County Court.

■ Ford is correct in asserting that parol evidence of a defendant's prior convictions, alone, is insufficient to establish the habitual offender status. *See Davis v. State* (1986), Ind., 493 N.E.2d 167, 168–69; *Morgan v. State* (1982), Ind., 440 N.E.2d 1087, 1090–91. "In view of the consequences at stake for any habitual offender candidate, and the relative ease with which the State can marshal accurate documentary proof, we are constrained to insist upon the rule requiring the State to present certified records of the prior convictions alleged, to ensure the integrity of future habitual offender determinations." *Davis*, 493 N.E.2d at 169.

■ Further, the granting of permission to reopen a case is within the discretion of the trial court and the decision will be reviewed only to determine whether or not there has been an abuse of that discretion. *Gorman v. State* (1984), Ind., 463 N.E.2d 254, 257. Among the factors which weigh in the exercise of discretion are whether there is any prejudice to the opposing party, whether the party seeking to

reopen appears to have rested inadvertently or purposely, the stage of the proceedings at which the request is made, and whether any real confusion or inconvenience would result from granting the request. *Flynn v. State* (1986), Ind., 497 N.E.2d 912, 914. Two conditions must be shown to exist to justify a court of appellate jurisdiction in setting aside a ruling made by a trial court in the exercise of judicial discretion: 1) the action complained of must have been unreasonable in light of all attendant circumstances or it must have been clearly untenable or unreasonable; and 2) the action was prejudicial to the rights of the complaining party. *Flynn*, 497 N.E.2d at 916, citing *Allman v. State* (1968), 253 Ind. 14, 19-20, 235 N.E.2d 56, 59.

■ A party should be afforded the opportunity to reopen its case to submit evidence which could have been part of its case in chief. *Gorman*, 463 N.E.2d at 257. Given Ford's claim of insufficient evidence, "the State should have had an opportunity to supply such insufficiency or reopen the case for that purpose, even after it had rested, since a trial is not a game of technicalities, but one in which the facts and truth are sought." *Eskridge v. State* (1972), 258 Ind. 363, 369, 281 N.E.2d 490, 493.

Here the effect of the court's decision to permit the prosecutor to reopen the habitual case was the admission of the certified records of Ford's 1984 receiving stolen property conviction which had previously been referred to by State's witness, John Whiteleather, during the State's case in chief. These records were admissible since they were probative of the issue of whether Ford had been previously convicted of that offense as set forth in the habitual offender information. The court did not abuse its discretion by allowing the State to re-open its case and present the records to the jury.

### III

Ford argues his trial counsel's assistance was ineffective. His allegations of inadequate performance by his counsel may be summarized as follows: 1) failure to dismiss two jurors; 2) failure to adequately confer with Ford prior to trial; 3) failure to secure by deposition the testimony of Kathy Bean, the victim's friend to whom the rape was first reported and who had moved to Germany before trial; 4) failure to move for a judgment on the evidence after the State rested; and 5) failure to allow Ford to testify in his own defense. To prevail on his claim, Ford must show that his attorney's performance was deficient and that the defense was prejudiced by the deficient performance. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh. denied* (1984), 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Jones v. State* (1986), Ind., 495 N.E.2d 532, 534.

■ Ford contends that counsel inexcusably failed to challenge two jurors since, during *voir dire*, each revealed a reluctance to vote not guilty should Ford not present any evidence. The record does not substantiate this claim. The jurors stated in response to questions from the defense attorney:

Q. All right. Mrs. Stump, what about yourself?

A. I'd have to base my decision on what I hear and what I see in the courtroom.

Q. There are some inferences that some people would like to draw if Mr. Ford doesn't testify or if someone else doesn't testify in his behalf. Some people might think that that means that therefore he's guilty or that indicates he might be guilty. Can you avoid drawing that kind of inference, do you think?

A. Yes.

A. (Don McCammon) I'm not sure if I understand what we're getting at. There would have to be testimony supposedly from two sides.

Q. Well, why would there have to be?

A. We have to have something to base a judgment on.

Q. All right. What I'm getting at, if you'll go along with me and let me pick on you a little bit, because

you're not the only one that's thinking this; okay? Who has to prove that Robert Ford is guilty?

A. The prosecuting attorney has to prove beyond a reasonable doubt.

Q. Okay.

A. And if that isn't done, then I think our objective would be to say there's no guilty vote.

Q. Okay. If he doesn't do it, I don't have to do it?

A. Right.

Q. So that's a situation where you might find that there's no evidence presented on the other side.

A. Yes.

Q. That's all I'm asking. You said it a lot better than I can.

This colloquy in no way establishes that these jurors were biased against Ford and defense counsel will not be held ineffective for failing to dismiss the jurors.

■ Ford claims his attorney was ineffective because he failed to adequately confer and advise him prior to trial. However, "one does not prove ineffective assistance of counsel simply by showing insufficient consultation." *Jones*, 495 N.E.2d at 534. Even if Ford's allegation of inadequate consultation had merit, he has not shown that any prejudice resulted. He has failed to meet his burden under *Strickland* and is therefore not entitled to relief.

■ Ford claims his counsel was ineffective because he failed to depose Kathy Bean, who had moved to Germany prior to trial. Counsel's decisions regarding whom to call as a witness are matters of strategy which this court will not second guess unless it appears clearly that the choices fell below objective professional standards. *Jones*, 495 N.E.2d at 534. Kathy Bean was A.G.'s friend. The day after the rape, A.G. went to Bean's house. After A.G. revealed the details of the rape to her, Bean told A.G. to report the rape to the police. Later that day, A.G. disclosed the incident to her aunt and then to police officers. While Bean could have testified as to A.G.'s actions on the day following the rape, she did not witness the crime nor does Ford suggest in what way her testimony would have

supported his defense or rendered the results of trial unreliable. He fails to meet his burden of proof. *See Marsillett v. State* (1986), Ind., 495 N.E.2d 699, 706.

■ Ford claims that counsel's failure to move for judgment on the evidence subsequent to the State's decision to rest coupled with his failure to present evidence in support of his defense amounts to *per se* inadequate counsel. As this court herein finds the evidence was sufficient to sustain the conviction, there was no prejudice to the defense. Defense counsel's failure to move for judgment on the evidence cannot be regarded as mistaken since the motion would not have been granted.

■ Lastly, Ford argues his counsel erred by failing to permit him to testify in support of his defense. This claim asks the court to assess trial counsel's strategy, which we will not do. Counsel's recommendation that Ford not testify was a tactical choice to protect his client from exposure of his criminal record. That choice should not now be second guessed because Ford was convicted. Ford has failed to demonstrate that his right to effective assistance of counsel was violated by the performance of his trial attorney and is thus not entitled to relief.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.