**Robert D. WALKER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 18S00–9102–CR–147.**

Supreme Court of Indiana.

March 6, 1992.

Rehearing Denied May 7, 1992.

William G. Bruns, Cannon & Bruns, Muncie, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana and Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, to which he was sentenced to a term of sixty (60) years.

The facts are: The victim in this case, Earnest Daugherty, age eighty-two, lived alone in his trailer in Muncie, Indiana. At 11:15 a.m. on July 15, 1985, Daugherty was observed as being in good health. At approximately 1:00 p.m. that same day, his daughter, Bessie Martin, visited the trailer and found that it had been broken into. Upon entering, she heard her father moaning. She found him in the bedroom bleeding from the head. She noticed a box fan overturned in the bedroom, the telephone was dead, and a carton of Viceroy cigarettes she had purchased for her father the day before was missing from on top of the refrigerator where Daugherty always kept his cigarettes.

Police and an ambulance were summoned but Daugherty eventually died of his wounds. The pathologist concluded that Daugherty died of severe head injuries from being struck by a blunt instrument, compatible with having been struck by the fan.

The day after Daugherty's injuries, appellant, who lived in a trailer four doors from Daugherty, told police he was sick in bed when the beating occurred. However, appellant's live-in girlfriend repeatedly telephoned him at home on July 15 between 11:30 and noon with no answer. Later that day, appellant would not answer his girlfriend's questions about what had happened at Daugherty's trailer or where he had been earlier that day. Appellant was unusually quiet that night and became upset the next day when he learned his girlfriend had spoken to police.

Within a week of the incident, appellant began drinking alcohol with his friend Wayne Wells and told Wells that he was nervous. He related that recently he and Troy Miller had gone into the home of an "old man" looking for social security money. The old man was in the bedroom and did not hear them enter. Appellant admitted he beat the old man and hit him with the fan causing his own clothes to become

bloody. Although the old man attempted to resist, appellant stated he was not moving when they left him. He told Wells he took a carton of cigarettes and that he and Miller took some money. However, appellant asked Wells not to reveal what he had told him.

After Wells talked to police in April of 1990, Detective Irelan and Detective Charles Hensley interviewed appellant. Appellant at first denied any participation in the murder, stating that he suspected his ex-roommate "Paul." He told the detectives that Miller admitted the murder and that he (appellant) was sick in bed at the time of the murder. After the police confronted appellant with inconsistent statements and questioned him as to why he knew of certain details of the crime which had not been published, appellant stated he wanted to be honest, began to cry, and asked if he would be jailed. Appellant stated he was acting as a lookout for Miller who broke into the trailer looking for money, killed the man, came out with a carton of cigarettes from atop the refrigerator, and had blood on his clothing.

After a prayer in which he admitted he "sinned very badly," he admitted he had gone into the trailer and that he got blood on his clothing in an attempt to see if the old man was dead. He stated that when they left, the old man was still alive and that Miller took a carton of cigarettes from on top of the refrigerator and money from the man's wallet. He first told police that they both changed clothes at a railroad trestle where Miller had stashed a change of clothes for them, but when questioned about the anticipated need for a change of clothing, he stated that they in fact had separated and that he returned home wearing his bloody clothes. The fact that cigarettes had been taken and the fan was a probable weapon was information which the police had not released to the public.

Appellant expressed remorse and told the officers he was an accessory. However, when the officers suggested videotaping his statement, he made a complete denial and requested counsel.

Jail inmate Chris Smith testified that while he and appellant were in jail together, appellant offered to pay him money to "help" with his alibi by telling police that Smith knew who had really killed Daugherty and that appellant was only a lookout. When Smith told appellant he would not help unless appellant told him the truth about the situation, appellant confessed that he and Miller broke into the trailer of an old man to steal money, that appellant walked into the bedroom where the old man was sleeping, punched him and slammed a box fan on the back of the man's head, getting blood on his own shirt. He told Smith he took a billfold and a carton of Viceroy cigarettes before leaving by way of a bathroom window. He then drew a diagram of the crime scene indicating the location of the fan on the bed. This description was accurate.

After both parties had rested, defense counsel received a call from another prisoner named Kenneth Riggin who said he would testify that Smith told him he was going into court and was going to commit perjury. He laughed and told Riggin not to tell anyone. Defense counsel then moved to reopen their case to place Riggin on the stand to attempt to impeach Smith. The trial judge denied that motion.

■ Appellant claims the trial court erred in denying his motion to reopen the case. Determination as to whether a case should be reopened for additional evidence rests within the sound discretion of the trial judge. *Ford v. State* (1988), Ind., 523 N.E.2d 742. The exercise of discretion is based upon whether prejudice would result to the opposing party, whether the party seeking the reopening appears to have rested inadvertently or purposely, the stage of the proceeding at which the request was made, and whether any real confusion or inconvenience would result from granting the request. *Id.* at 745–46. We will not set aside the trial court's ruling unless we find that it was unreasonable in light of all of the attendant circumstances. *Id.* at 746.

■ In the case at bar, although Smith's testimony tended to incriminate appellant, it was by no means the only testimony on

that subject. The testimony of Sherry Gray tended to contradict appellant's early stories of being sick in bed at the time the crime was committed. The testimony of Wayne Wells as to appellant's confession to him very closely tracked appellant's own statement to the police officers. The evidence in this case is so overwhelming that whether defense counsel would have been successful in impeaching Smith would have been of little moment in the final analysis. We therefore see no reversible error in refusing to reopen the case to permit the testimony of Riggin.

Appellant contends the trial court erred in refusing to excuse juror Odel when it was discovered she had called police officer Schlegal, who was her personal friend, and inquired about a witness who had testified in the trial, Detective Norman Irelan. In his brief, appellant leaves the impression that the conversation between juror Odel and Officer Schlegal concerned the reliability of Irelan's testimony and facts concerning the case. However, the record discloses that Mrs. Odel thought that witness Irelan looked remarkably like her son and inquired of the police officer if he knew whether it could possibly be her son's brother. It was within the discretion of the trial court to determine whether the evidence presented showed any irregularity. *Kelley v. State* (1990), Ind., 555 N.E.2d 140.

In the case of *Shack v. State* (1972), 259 Ind. 450, 288 N.E.2d 155, a similar situation prevailed. Two State's witnesses spoke briefly with two jurors who had asked directions to a restaurant. The trial court found and was affirmed by this Court that no mistrial was required since the encounter did not concern any facts in the case. In the case at bar, the trial court did not err in refusing appellant's motion to excuse juror Odel.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.