**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MICHAEL C. BORSCHEL**
Fishers, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

FILED
Apr 23 2013, 9:29 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| D.S., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1210-JV-522 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Geoffrey A. Gaither, Magistrate
Cause No. 49D09-1207-JD-1842

**April 23, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

D.S. appeals the adjudication finding him a delinquent child for committing what would be the crime of receiving stolen property[1] as a Class D felony if committed by an adult. On appeal, D.S. raises the following restated issues:

I. Whether the juvenile court abused its discretion by permitting the State to reopen its case in chief; and

II. Whether the juvenile court committed reversible error by denying his motion for involuntary dismissal under Indiana Trial Rule 41(B).

We affirm.

## FACTS AND PROCEDURAL HISTORY

During May 2012, Ty Steigmeyer ("Steigmeyer") and Leslie Uland ("Uland") lived in the 4500 block of Carrollton Avenue in Indianapolis. Around 7:00 p.m. on May 17, 2012, the couple left their two Trek bicycles on their home's screened-in porch. When Uland awoke at 7:00 the next morning, she discovered that the porch screen had been cut and the bicycles were gone. The couple called the Indianapolis Metropolitan Police Department ("IMPD"), but because the police station was involved in roll call, officers did not immediately respond.

Uland and Steigmeyer decided to drive around the neighborhood to look for their bicycles. In the alley of the 4300 block of Carrollton Avenue, less than two blocks from their home, they saw Steigmeyer's bicycle and lock in a backyard. Steigmeyer approached the bicycle and confirmed that it was his. The couple left the bicycle and lock at the scene and drove to a nearby police station to inform the police that they had found the bicycle.

_____
[1] *See* Ind. Code § 35-43-4-2.

Officer Martin Koeller ("Officer Koeller") of the IMPD was standing outside the police station near his patrol car; the couple told him their story. Officer Koeller responded to their request to investigate, located the residence in question, but did not find the bicycle. However, Officer Michael Burgess ("Officer Burgess") of the IMPD, responding contemporaneously to the original theft call, drove independently to the location and found a bicycle matching Steigmeyer's bicycle inside a locked front porch at the house at 4301 Carrollton Avenue. Officer Burgess also noticed a bicycle lock at the rear of the residence. Steigmeyer identified the bicycle as his. The bicycle serial number matched that from Steigmeyer's original purchase and Steigmeyer's key opened the bicycle lock found in the backyard. The police returned the bicycle to Steigmeyer, and the next day, D.S.'s father came to Steigmeyer's home to report that the second bicycle could also be found at his home at 4301 Carrollton Avenue. Uland's bicycle was also recovered from that location.

While at the scene, Officer Koeller spoke to several persons including D.S., his aunt, and his father. Officer Koeller was also present when D.S. was interviewed by a detective. During that meeting, D.S. stated that he bought what was later identified as Steigmeyer's bicycle from someone on the street in his neighborhood for ten or twenty dollars. Eventually, D.S. was arrested and the State filed a petition charging him with committing what would be the crime of receiving stolen property as a Class D felony if committed by an adult.

On August 29, 2012, the juvenile court held a denial hearing. Following the State's case in chief, D.S. moved for involuntary dismissal pursuant to Indiana Trial Rule

3

41(B) on the basis that the State had produced no evidence that D.S. possessed the bicycles or "that he knew that [the bicycles] were stolen." *Tr.* at 23. The juvenile court granted the State's motion to reopen its case to ask some additional questions of Officer Koeller. Thereafter, D.S. renewed his motion for involuntary dismissal, which the juvenile court denied. The juvenile court found the allegation of D.S.'s delinquency to be true. D.S. now appeals.

## DISCUSSION AND DECISION

### I.    Motion to Reopen State's Case in Chief

D.S. first contends that the juvenile court abused its discretion when it granted the State's motion to reopen its case in chief during the fact-finding hearing. A party should generally be afforded the opportunity to reopen its case to submit evidence that could have been part of its case in chief. *Saunders v. State,* 807 N.E.2d 122, 126 (Ind. Ct. App. 2004). Whether to grant a party's motion to reopen its case after having rested is a matter committed to the sound discretion of the trial judge. *Id.* The factors that weigh in the exercise of discretion include whether there is prejudice to the opposing party, whether the party seeking to reopen appears to have rested inadvertently or purposely, the stage of the proceedings at which the request is made, and whether any real confusion or inconvenience would result from granting the request. *Id.* Additionally, "[t]he opportunity for a party to reopen its case includes the chance to cure a claimed insufficiency of evidence." *Lewis v. State*, 406 N.E.2d 1226, 1230 (Ind. Ct. App. 1980) (citing *Eskridge v. State*, 258 Ind. 363, 369, 281 N.E.2d 490, 493 (1972)). The rationale being that "'a trial is not a game of technicalities, but one in which the facts and truth are

4

sought.'" *Ford v. State*, 523 N.E.2d 742, 746 (Ind. 1988) (quoting *Eskridge*, 258 Ind. at 369, 281 N.E.2d at 493).

Following the State's case in chief, D.S. moved for involuntary dismissal pursuant to Indiana Trial Rule 41(B) on the basis that the State had produced no evidence that D.S. possessed the bicycles or "that he knew that [the bicycles] were stolen." *Tr.* at 23. The State immediately made a motion to reopen its case in chief in order to ask Officer Koeller, who had recently testified, a few more questions. *Id.* at 24. The juvenile court granted the State's request. The State questioned Officer Koeller about information he learned during an interview of D.S. *Id.* at 26. Officer Koeller testified that D.S. stated he had purchased one bicycle from a black male who approached him on the street, that he did not know the man's name; and that he had paid the man ten or twenty dollars for the bicycle. *Id.* at 31. Officer Koeller "took that to mean that [D.S.] had possession of [the bicycle]." *Id.* D.S. maintains that the juvenile court abused its discretion when it granted the State's motion to reopen the case.

Our decision in *Saunders* serves as guidance to our analysis. At the close of the State's case, Saunders moved for judgment on the evidence based on the State's failure to identify Saunders as the person accused. *Saunders*, 807 N.E.2d at 126. The trial court denied Saunders's motion, and then allowed the State to reopen its case so the victim could identify Saunders. *Id.* Saunders alleged this was error, as he was prejudiced by the identification. *Id.* Our court reasoned as follows:

> In *Jones v. State,* 269 Ind. 543, 548, 381 N.E.2d 1064, 1067 (1978), no abuse of discretion was found when the State was allowed to reopen its case to present evidence of the defendant's age. The State both rested and

5

moved out of the presence of the jury to reopen its case. Our supreme court held "no real confusion or inconvenience [was] occasioned by the reopening of the [S]tate's case." Similarly, in *Lewis v. State,* 406 N.E.2d 1226, 1231 (Ind. Ct. App. 1980), there was no abuse of discretion in allowing the State to reopen its case to present identification testimony where the State sought to reopen immediately after the close of its case-in-chief and where the witness to be presented in reopening was the last witness in its case-in-chief. The court reasoned there was therefore no undue emphasis on the witness's reopening testimony. *Id.* at 1230.

The identification evidence [the victim] offered after the case was reopened was evidence that could have been part of the State's case-in-chief. Even though [the victim] was not the State's last witness, she had been recalled to the stand at least once after her initial direct and cross examination in order to answer a juror's question. As a result, it is not apparent that undue emphasis could have been placed on her return to the stand to identify Saunders. The trial court's grant of the State's motion to reopen its case was not an abuse of discretion.

*Id.*

The State made a request to reopen the case just minutes after the State rested, and the evidence presented when the case was reopened could have been admitted during the State's case in chief. Here, D.S. was not prejudiced by the additional evidence because D.S. had the right to both cross-examine Officer Koeller and offer evidence in his own defense. *See Gorman v. State*, 463 N.E.2d 254, 257 (Ind. 1984) (no prejudice in reopening case where witness was known to defense and defense given opportunity to cross-examine witness and call additional witnesses in his behalf). Furthermore, because the fact-finding hearing was before the bench, there was no real confusion or inconvenience. A fact-finding hearing, like a trial, is not a game of technicalities, but one in which the facts and truth are sought. *Ford*, 523 N.E.2d at 746. The juvenile court did not abuse its discretion in allowing the State to reopen its case in chief.

6

## II.    Voluntary Dismissal Pursuant to Trial Rule 41(B)

D.S. next contends that the juvenile court committed reversible error by failing to grant his motion for involuntary dismissal pursuant to Trial Rule 41(B) where the evidence was insufficient to show beyond a reasonable doubt that D.S. knew that the bicycles were stolen.

> Involuntary dismissal:  Effect thereof.  After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief.  The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. . . .

Ind. Trial Rule 41(B).

> Our review of the juvenile court's Trial Rule 41(B) decision is well-established:

> > The grant or denial of a motion to dismiss made under Trial Rule 41(B) is reviewed under the clearly erroneous standard. *Taflinger Farm v. Uhl*, 815 N.E.2d 1015, 1017 (Ind. Ct. App. 2004).  In reviewing a motion for involuntary dismissal, this court will not reweigh the evidence or judge the credibility of the witnesses.  *Id.*  We will reverse the trial court only if the evidence is not conflicting and points unerringly to a conclusion different from the one reached by the lower court. *Chemical Waste Mgmt. of Ind., L.L.C. v. City of New Haven*, 755 N.E.2d 624, 635 (Ind. Ct. App. 2001).

> *Thornton–Tomasetti Eng'rs v. Indianapolis–Marion County Pub. Library*, 851 N.E.2d 1269, 1277 (Ind. Ct. App. 2006)).  In a criminal action, "[t]he defendant's [Trial Rule 41(B)] motion is essentially a test of the sufficiency of the State's evidence."  *Workman v. State*, 716 N.E.2d 445, 448 (Ind. 1999). Notably, our review of the denial of the motion for involuntary dismissal is limited to the State's evidence presented during its case-in-chief.  *See Harco, Inc. v. Plainfield Interstate Family Dining Assocs.*, 758 N.E.2d 931, 938 (Ind. Ct. App. 2001); *see also Stephenson v. Frazier*, 425

7

N.E.2d 73, 74 (Ind. 1981) ("Our review of the denial of the motion for involuntary dismissal . . . is limited to an examination of the evidence most favorable to [the State] which was presented prior to the filing of the motion.") (quoting *F.D. Borkholder Co. v. Sandock*, 274 Ind. 612, 413 N.E.2d 567, 570 n.2 (1980)), *superseded on other grounds*, Ind. Trial Rule 41(B) (as amended Nov. 4, 1981).

*Todd v. State*, 900 N.E.2d 776, 778 (Ind. Ct. App. 2009) (quoting *Williams v. State*, 892 N.E.2d 666, 670-671 (Ind. Ct. App. 2008) (alterations in original), *trans. denied*).

The statute defining the crime of receiving stolen property provides: "A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property, a Class D felony." Ind. Code § 35-43-4-2(b). "In addition to proving the explicit elements of the crime, the State must also prove beyond a reasonable doubt that the person knew that the property was stolen." *S.G. v. State*, 956 N.E.2d 668, 681 (Ind. Ct. App. 2011) (citing *Fortson v. State*, 919 N.E.2d 1136, 1139 (Ind. 2010)), *trans. denied*; see Ind. Code § 35-41-2-2(d) ("Unless the statute defining the offense provides otherwise, if a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct."). "The test of knowledge is not whether a reasonable person would have known that the property had been the subject of theft, but whether, from the circumstances surrounding the possession, the defendant himself knew that it had been the subject of theft." *Id*. "'[K]nowledge that property is stolen may be inferred from the circumstances surrounding the possession.'" *Id*. (quoting *Fortson*, 919 N.E.2d at 1139).

8

D.S. is correct that "the mere unexplained possession of recently stolen property standing alone does not automatically support a conviction for theft." *Fortson*, 919 N.E.2d at 1143. "Rather, such possession is to be considered along with the other evidence in a case, such as how recent or distant in time was the possession from the moment the item was stolen, and what are the circumstances of the possession (say, possessing right next door as opposed to many miles away)." *Id.* "In essence, the fact of possession and all the surrounding evidence about the possession must be assessed to determine whether any rational juror could find the defendant guilty beyond a reasonable doubt." *Id.*

During the fact-finding hearing, the State presented evidence that Steigmeyer and Uland's bicycles were stolen between 7:00 p.m. on May 17, 2012 and 7:00 a.m. on May 18, 2012. *Tr.* at 20. The bicycles were stolen from the 4500 block of Carrollton Avenue. *Id.* at 2-3. Less than twelve hours after the bicycles were stolen, Steigmeyer saw a bicycle, later confirmed to be his, in the backyard of a house in the 4300 block of Carrollton Avenue ("the home"). *Id.* at 12, 20. The bike was found less than two blocks from Steigmeyer's house. Steigmeyer left the bicycle in the yard and informed the police. *Id.* at 17. When Officer Koeller went to the home, the bicycle was gone. *Id.* Upon further investigation, Officer Burgess found that the bicycle had been moved and was now inside an enclosed and locked front porch of the home. *Id.* at 13. Police spoke with a woman at the home who turned out to be the aunt of D.S. *Id.* at 18. The next day, a man, identified in court as D.S.'s father, knocked on the victims' door to report that the other bicycle was also at the home. *Id.* at 21-22. Uland testified that D.S.'s father had no

9

reason to know Steigmeyer's address. *Id.* at 22. Steigmeyer and Uland recovered Uland's bicycle from the home—the same place where Steigmeyer's bicycle had been found. *Id.* at 21. When the case was reopened, and prior to D.S.'s renewed motion for involuntary dismissal, the State introduced evidence that D.S. admitted he purchased Steigmeyer's bicycle for ten or twenty dollars, from a man he did not know, and who randomly approached D.S. on the street and asked him if he wanted to buy the bicycle. *Id.* at 31, 32.

D.S. was not charged with having stolen the property; instead, he was charged with receiving stolen property. The State presented the following evidence: Steigmeyer's and Uland's bicycles were stolen from Steigmeyer's house; D.S. bought Steigmeyer's bicycle the same night it was stolen at a location close to Steigmeyer's house; D.S. bought the bicycle from a man on the street that he did not know and for a relatively low price; and the bicycle, while initially outside, was placed in the locked porch of D.S.'s home soon after Steigmeyer discovered it. This evidence was sufficient to support the juvenile court's conclusion that D.S. received property that he knew had been stolen. Accordingly, the juvenile court did not commit reversible error when it failed to grant his motion for involuntary dismissal pursuant to Trial Rule 41(B).

Affirmed.

VAIDIK, J., and PYLE, J., concur.