

FILED

Dec 28 2016, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**ATTORNEY FOR APPELLANT**

Karen S. Celestino-Horseman
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Gilman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 28, 2016

Court of Appeals Case No.
49A02-1601-CR-95

Appeal from the Marion Superior
Court.
The Honorable Stanley E. Kroh,
Magistrate.
Cause No. 49G03-1505-F5-017073

**Darden, Senior Judge**

# Statement of the Case

[1] A jury found James Gilman guilty of leaving the scene of an accident resulting in death, a Level 5 felony.[1] He appeals the trial court's decision to allow the State to reopen its case after closing argument.

# Issue

[2] Specifically, the sole issue Gilman presents is whether the trial court erred in allowing the State to reopen its case after closing argument to present evidence in rebuttal of Gilman's prior knowledge of an existing warrant for his arrest as being unduly prejudicial and an abuse of discretion.

# Facts and Procedural History

[3] Gilman and Melissa were married, but were separated. Despite the separation, Gilman continued to visit Melissa where she resided. Robin Kemp was the mother of Gilman's children.

[4] On April 21, 2015, at around 10:15 p.m., Robin drove to the house where Melissa resided and Gilman was visiting. Melissa approached Robin's Chevrolet Equinox. Robin, who remained in the car, was yelling and claimed that she was on her cell phone with the police. She was angry about a dispute that had arisen between her and Gilman about who owned a Chevrolet Impala

---

[1] Ind. Code § 9-26-1-1.1(a)(1)(A) (2015).

that was registered in Robin's name but was in Gilman's possession. Melissa went back inside the house and spoke to Gilman.

[5] Shortly thereafter, Gilman left the house, entered the Impala, and attempted to drive away. Robin then drove her vehicle into the Impala, knocking it into the neighbor's yard. After the collision, the two vehicles then "took off" down the street. Tr. p. 153.

[6] Both Gilman and Robin were driving at unsafe, high speeds, and their cars bumped several times. While driving side by side, at approximately 87 miles per hour, the cars collided. The collision was so forceful that it lifted the Equinox's tires off the pavement and caused it to run off the road, slide onto soft ground, and strike a tree. As a result of the impact, Robin sustained multiple blunt force traumatic injuries, including one to her head which killed her instantly. The accident occurred around 10:30 p.m.

[7] The impact caused Gilman's vehicle to spin out of control. His Impala came to rest approximately 129 feet from Robin's. The Impala was facing the Equinox and had one functioning headlight, which made Robin's vehicle visible to Gilman. Neighbors tried to assist Robin before emergency response arrived. However, Gilman exited the Impala and fled the scene of the accident without rendering assistance to Robin and before the police or emergency services arrived. Gilman did not report the accident to the police. He did not return to his home, or contact his wife, until three days later. Gilman learned, shortly after the accident, that Robin had died.

[8] The police interviewed Gilman about the accident on May 15, 2015. During the interview, Gilman admitted that at the time of the accident he knew of an outstanding active warrant for his arrest in an unrelated case. On May 18, 2015, Gilman was charged with Level 5 felony leaving the scene of an accident resulting in death.

[9] Pre-trial the State filed a notice of intent to offer Trial Rule 404(b) evidence depending on defendant's defense.[2] At a hearing held on the matter, the State informed the trial court that it would introduce evidence of Gilman's prior knowledge of the outstanding arrest warrant if Gilman argued at trial that he had a defense for leaving the scene of the accident. After the hearing, the trial court issued an order, finding that the arrest warrant evidence was relevant to Gilman's motive and intent for leaving the scene of the accident, but that "the probative value of the . . . evidence is substantially outweighed by the danger of unfair prejudice . . . ." Appellant's App. p. 38. Nevertheless, the court determined that "should Defendant place intent at issue by presenting a claim of particular contrary intent, the evidence then is admissible." *Id*.

[10] At trial, the State presented its evidence, including autopsy evidence that at the time of the accident Robin tested positive for high levels of methamphetamine and amphetamine. The State rested. Gilman rested without presenting any evidence or testimony. However, in closing, defense counsel argued that

---

[2] Neither the notice of intent to offer evidence nor the brief in support were included in Appellant's Appendix.

Gilman fled the scene of the accident "out of necessity" because Robin was exhibiting aggressive behavior and he feared Robin would hurt him. Tr. p. 177. The State objected immediately and the trial court sustained the objection.

[11] Immediately following the conclusion of defense counsel's closing argument, the State requested permission of the court to reopen its case and present additional evidence because the State believed counsel had made a necessity defense claim.[3] Gilman objected. The court granted the State's request but it also allowed Gilman to supplement his argument if he chose to do so.

[12] The State reopened its case and Sergeant Doug Heustis, with the Indianapolis Metropolitan Police Department, testified that Gilman was aware of an active warrant for his arrest at the time of the accident.[4] Gilman did not cross-examine Heustis or reopen his case, but did supplement his closing argument. Gilman now appeals.

## Discussion and Decision

[13] Gilman maintains that the trial court erred when it allowed the State to reopen its case to present evidence of his arrest warrant because the evidence was more

---

[3] The prerequisites in establishing a necessity defense are: (1) the act charged as criminal must have been done to prevent a significant evil; (2) there must have been no adequate alternative to the commission of the act; (3) the harm caused by the act must not be disproportionate to the harm avoided; (4) the accused must entertain a good-faith belief that his act was necessary to prevent greater harm; (5) such belief must be objectively reasonable under all the circumstances; and (6) the accused must not have substantially contributed to the creation of the emergency. *Toops v. State*, 643 N.E.2d 387, 390 (Ind. Ct. App. 1994). Neither Gilman nor the State requested a necessity defense instruction.

[4] No evidence was presented during trial on the nature of Gilman's arrest warrant or the crime charged.

prejudicial than probative. Gilman also argues it was the State that opened the door to his intent to leave the scene of the accident.

[14] Whether the trial court allows the State to reopen its case after the State has rested is a matter of judicial discretion, and for reversible error the defendant must establish that the trial judge clearly abused that discretion. *Maxwell v. State*, 408 N.E.2d 158, 163 (Ind. Ct. App. 1980). Among the factors which weigh in the exercise of discretion are whether there is any prejudice to the opposing party, whether the party seeking to reopen appears to have rested inadvertently or purposely, the stage of the proceedings at which the request is made, and whether any real confusion or inconvenience would result from granting the request. *Ford v. State*, 523 N.E.2d 742, 745-46 (Ind. 1988). Two conditions must be shown to exist to justify a court of appellate jurisdiction in setting aside a ruling made by a trial court in the exercise of judicial discretion: 1) the action complained of must have been unreasonable in light of all attendant circumstances or it must have been clearly untenable or unreasonable; and 2) the action was prejudicial to the rights of the complaining party. *Id*. at 746.

[15] During closing argument, over the State's objection, Gilman's counsel argued that Gilman had six seconds to decide what to do at the scene of the accident, stating: "And what was that decision? Do I stick around and risk getting killed or do I run? Split-second decision, life at issue[.]" Tr. p. 173. Counsel later stated: "State argues that he knew that [Robin] hit the tree because they were right by each other. But let's look at the conditions. It's dark. He's scared."

*Id*. at 176.  Counsel closed by stating:  ". . . I would ask you today to find that there was a reason he ran.  He ran out of necessity.  Had he known that she had crashed, it might have been a different story. . .  And so he ran because he thought his life was in danger."  *Id*. at 177-78.

[16]    The State made its request to reopen its case immediately after defense counsel concluded his closing argument.  The court granted the request, stating:

> At this point, the Court believes the relevance of the reasons Mr. Gilman left [the scene of the accident], the existence that he was aware of a warrant, that relevance becomes much more greater, and, in the Court's view, outweighs the possibility of unfair prejudice.
>
> So the Court is going to allow the State to reopen its case.  However, the Court is also going to give the defense a chance to argue again after you – I think what we will do is – I guess the fair way to do it would be after you close your case to allow the defense to respond by giving their closing argument.  It's more time on closing.  And then give you your chance to rebut.

*Id*. at 192.  The court then allowed Sergeant Heustis to testify regarding Gilman's prior knowledge of the arrest warrant before the incident, and gave Gilman the opportunity to cross-examine Heustis and present additional closing argument.  Based upon the trial court's pre-trial ruling on the outstanding arrest warrant evidence, the evidence presented during trial, the events that transpired during trial, and the trial court's careful consideration in attempting to balance and address the equities in this matter, we decline to find an abuse of discretion.

[17]   Gilman was forewarned in advance by the court, pre-trial, that opening the door to Gilman's motive for leaving the scene of the accident could result in the admission of the arrest warrant evidence. Gilman did not heed the court's warning. Subsequently, counsel argued at closing that Gilman fled the scene of the accident because he feared Robin would hurt him. Even though the State objected to counsel's closing argument and the trial court sustained the objections, counsel continued to press the "fear of injury" motive for leaving the scene of the accident. As a result, the State requested permission to reopen its case immediately after defense counsel concluded his closing argument. Based on defense counsel's closing argument, the trial court exercised is discretion and determined that the probative value of the arrest warrant evidence outweighed any unfair prejudice, and allowed the State to reopen its case and call Sergeant Heustis to the witness stand to testify. Likewise, the trial court granted Gilman permission to reopen and/or supplement his argument.

[18]   Heustis was not a surprise witness. He had testified in the State's case-in-chief. Heustis's interview with Gilman regarding Gilman's knowledge of the arrest warrant was recorded, and defense counsel had a copy of the recording, pre-trial. Before Heustis testified before the jury about the arrest warrant evidence, Gilman was again provided a preview of Heustis's testimony. Outside of the jury's presence, the trial court asked the State to proffer Heustis's testimony to the court and defense counsel only. No evidence was presented to the jury regarding the specific details of Gilman's arrest warrant or the crime charged.

Gilman was given the opportunity to cross-examine Sergeant Heustis, but declined. *See Gorman v. State*, 463 N.E.2d 254, 257 (Ind. 1984) (no prejudice found in reopening case where witness was known to defense and defense given opportunity to cross-examine witness and call additional witnesses in his behalf). The State then re-rested, and the trial court allowed defense counsel the opportunity to supplement his closing argument.

We conclude that under these circumstances, allowing the State to reopen its case was not unreasonable. Also, Gilman has failed to show how he was unduly prejudiced by the reopening. Defense counsel had been forewarned and was well aware of the consequences of arguing Gilman's motive for fleeing the scene of the accident, and, upon reopening the case, the trial court gave Gilman an opportunity to cross-examine the sole witness (Heustis) on the matter and to supplement his closing argument. The trial court did not abuse its discretion on this issue.

## Conclusion

For the reasons stated, we find that the trial court did not abuse its discretion in in allowing the State to reopen its case and present evidence of Gilman's knowledge of his arrest warrant.

Affirmed.

Robb, J., and Barnes, J., concur.