# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 17 2018, 8:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR CO-APPELLEE

Carey Haley Wong
Child Advocates, Inc..
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of N.J. and J.J., Children in Need of Services

M.R. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner,*

January 17, 2018

Court of Appeals Case No.
49A02-1707-JC-1565

Appeal from the Marion Superior Court – Juvenile Division

The Honorable Marilyn Moores, Judge

The Honorable Danielle Gaughan, Magistrate

Trial Court Cause Nos.
49D09-1612-JC-4497
49D09-1612-JC-4498

*And*

Child Advocates, Inc.,

*Co-Appellee (Guardian ad Litem)*

**Vaidik, Chief Judge.**

# Case Summary

[1] M.R. ("Mother") appeals the trial court's finding that her sons are children in need of services ("CHINS") and its order requiring her to participate in home-based therapy. Finding no error, we affirm.

# Facts and Procedural History

[2] Mother and M.J. ("Father") have two sons: N.J., born in December 2013, and J.J., born in November 2016. On December 9, 2016, a few weeks after J.J. was born, Mother noticed that he was acting particularly fussy and took him to the emergency room. He was found to have a variety of injuries, including thirteen rib fractures, a broken collar bone, four leg and arm fractures, brain bleeding, spinal damage, and bruised lungs. It was determined that the injuries were non-accidental, and Father eventually admitted to beating J.J. Father was arrested and charged with felony battery and neglect of a dependent.

[3]     On December 13, the Department of Child Services ("DCS") filed a petition alleging that both J.J. and N.J. were CHINS. Both children were removed from Mother and Father and placed with Mother's mother. The fact-finding hearing began on March 21, 2017. One of DCS's witnesses failed to appear, so the trial court ordered the parties to return a week later. In the meantime, the court ordered the children returned to Mother on the condition that the children have no contact with Father, who by then had been released on bond in his criminal case.

[4]     On the second day of the fact-finding hearing on March 28, DCS called its final witness and then rested its case, and the attorneys delivered closing arguments. The court took the matter under advisement and scheduled a ruling hearing for May 2, leaving the children in Mother's care.

[5]     On April 5, the Family Case Manager ("FCM") assigned to the case, Arealia Williams, made an unannounced visit to Mother's home and decided to remove the children. In an affidavit filed the next day, FCM Williams stated that when she knocked on the door at Mother's home, Father answered. She added:

> At that time [Mother] was not at home but later arrived home. [Father] has a [no-contact order] with the Criminal Courts as well as DCS and is not allowed to have access to the children or [Mother]. At this time DCS cannot ensure the safety of the children if they are left in the care of their mother.

Appellant's App. Vol. II p. 85.

[6] On April 10, DCS moved to reopen its case in chief. Over objections by Mother and Father, the court granted the motion and set a third day of the fact-finding hearing for May 23. At that hearing, FCM Williams testified as follows regarding the visit on April 5:

> I initiated a pop-in at the home to check the wellbeing of the children. When I got to the home, I knocked and stood outside for a while. Eventually, someone answered the door. I noticed who it was that answered the door. I recognized the guy which was the children's father. I asked him was [Mother] in the home, he said hold on, then he shut the door and then somebody else came to the door, which was later identified as [Mother's] brother.

Tr. pp. 120-21. Williams said that she had met and spoken with Father in person before April 5 and that she was "sure" it was him who answered the door at Mother's home that day. *Id*. at 127. She also testified that Mother was not present when she arrived but showed up shortly thereafter and let her in the home, where she saw the children, Mother's brother, and two other, unidentified people. She said she did not see Father again after he answered the door. Mother, on the other hand, testified that Father was not at her home on April 5.

[7] After the hearing, the trial court issued an order in which it found the children to be CHINS. It explained, in part:

> The children's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the children's parent, guardian, or custodian to supply

the children with necessary food, clothing, shelter, medical care, education, or supervision. Father inflicted horrific injuries to [J.J.] and Mother has shown an inability to protect both children from future and further injury. In spite of the order of this Court, the no contact order from a criminal court, the protective order, and the knowledge that Father had seriously injured [J.J.], Mother still allowed Father around the children. Not only did she allow Father around the children, she left the house. Though there were other people present in the home, it had only been approximately four months since Father caused severe and extensive injuries to [J.J.]. For Mother to allow Father access to the children demonstrates excessively poor judgment by Mother, is a failure by her to supply the children with appropriate supervision, and is a significant risk to the safety of the children.

Appellant's App. Vol. II pp. 113-14. The court then held a dispositional hearing and ordered Mother to participate in home-based therapy.

[8]     Mother now appeals.[1]

# Discussion and Decision

[9]     Mother's appeal, like the trial court's CHINS finding, focuses on the conclusion that Mother allowed Father to be around the children while the case was pending, which in turn was based on FCM Williams' testimony on the third day of the fact-finding hearing. We begin by addressing Mother's contention

---

[1] Father is not involved in this appeal. A few months after the CHINS disposition, he pled guilty to felony battery in the criminal case and was sentenced to serve three years in prison.

that the third day of the hearing never should have happened—that the trial court should not have agreed to reopen the hearing.

[10] Initially, Mother asserts that the trial court lacked authority to reopen the case. She cites our Supreme Court's statement that "[a] party should be afforded the opportunity to reopen its case to submit evidence which could have been part of its case in chief." *Ford v. State*, 523 N.E.2d 742, 746 (Ind. 1988). She takes this to mean that a trial court can never reopen a case to allow a party to present evidence that could **not** have been part of its case in chief—that is, newly discovered evidence. Mother does not cite any authority in support of this proposition, and we are not aware of any. In fact, one of the other cases cited by Mother provides authority to the contrary. *See Lee v. State*, 439 N.E.2d 603, 604-05 (Ind. 1982) (affirming trial court's decision to reopen case to allow State to present evidence that defendant, after State initially rested, tried to escape from custody); *see also Cansler v. State*, 281 N.E.2d 881, 883 (Ind. 1972) ("The trial court possessed the requisite power to re-open this case and hear this additional witness[.]").

[11] Mother also argues that, even if the trial court had discretion in deciding whether to reopen the hearing, it abused that discretion. *See Moss v. State*, 13 N.E.3d 440, 446 (Ind. Ct. App. 2014) ("The granting of permission to reopen a case is generally within the discretion of the trial court, and the decision will be reviewed only to determine whether there has been an abuse of discretion."), *trans. denied*. Specifically, Mother contends that reopening the hearing served to delay the reunification of the family. But we agree with DCS that the move

actually had the exact opposite effect. If the trial court had done as Mother suggests and required DCS to file "a new request for permission to file a new Petition Alleging the Children CHINS," Appellant's Br. p. 37, the case would have started essentially from scratch, and reunification would have been delayed even further.

[12] Mother has not convinced us that the trial court erred or abused its discretion by reopening the hearing.[2]

[13] Mother's primary argument on appeal is that, even if the third day of the hearing was properly held, DCS failed to present sufficient evidence to support the CHINS finding. Despite this broad framing, Mother's argument ultimately turns on one narrow issue: whether there is evidence that supports the trial court's conclusion that Mother allowed Father to be with the children while the case was pending.[3] We conclude that there is.

[14] When asked to decide whether there is sufficient evidence to support a CHINS finding, we consider only the evidence and reasonable inferences therefrom that

---

[2] Mother also cites Indiana Code section 31-34-11-1, which provides that the fact-finding hearing in a CHINS case "shall" be completed within 120 days of the filing of the CHINS petition (or sixty days if, unlike in this case, the parties do not consent to an extension). Here, the fact-finding hearing was completed more than 160 days after the petition was filed. However, as Mother herself acknowledges, we have held that the "shall" used in the statute is directory, not mandatory, given the protective purposes of the CHINS statutes. *See Parmeter v. Cass Cty. Dep't of Child Servs.*, 878 N.E.2d 444, 448 (Ind. Ct. App. 2007), *reh'g denied*. For the reasons already discussed, the trial court was justified in allowing the fact-finding hearing to continue beyond the statutory deadline.

[3] Mother does not argue, in the alternative, that the CHINS finding was erroneous even if it is true that she allowed Father around the children. Implicit in this silence is an acknowledgement that, if she allowed Father to be around the children, the CHINS finding was proper.

are most favorable to the judgment, and we neither reweigh the evidence nor reassess the credibility of the witnesses. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). In this case, while Mother testified and argued in the trial court that Father was not actually around the children during the case—that FCM Williams was mistaken in her belief that the man who answered the door at Mother's home was Father—she (correctly) does not challenge the trial court's credibility determination on that issue. Instead, she asserts that there is no evidence that she willingly **allowed** Father to be around the children. She maintains that "there was no evidence Mother had knowledge that when she left the home, she was aware the Father would be in the home, that he was at the home, or that he had been in the home prior to the children's removal from her home." Appellant's Br. p. 29. But regardless of whether Father arrived at Mother's home before or after she went out, the trial court's conclusion that Mother "allowed" him to be there is an entirely reasonable inference from the evidence that Father was in the home and felt comfortable enough to answer the door. The conclusion is also supported by the fact that the other people in the home, including Mother's own brother, did nothing to keep Father out, which suggests that Mother did not instruct them to do so.

[15] Mother's final argument is flawed for the same reason. She contends that the trial court should not have ordered her to participate in home-based therapy because she "had already successfully completed homebased therapy[.]" *See id.* at 34. This assumes, of course, that the therapy had its intended impact on Mother the first time. But the trial court clearly believed otherwise, a

conclusion that is supported by the evidence that Mother allowed Father to be with the children while the case was pending. Therefore, we cannot say that the trial court erred by ordering Mother to continue home-based therapy.

Affirmed.

May, J., and Altice, J., concur.