## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 29 2017, 9:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Josiah Keyes,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 29, 2017

Court of Appeals Case No.
49A04-1604-CR-828

Appeal from the Marion Superior Court.
The Honorable Lisa F. Borges, Judge.
Trial Court Cause No. 49G04-1509-F3-32384

**Barteau, Senior Judge**

# Statement of the Case

Josiah Keyes appeals his conviction of aggravated battery, a Level 3 felony.[1] We affirm.

# Issues

Keyes raises two issues, which we restate as:

I. Whether the trial court abused its discretion in denying Keyes's request to reopen the case after both parties rested.

II. Whether the trial court abused its discretion in prohibiting Keyes from testifying about possible bias by one of the State's witnesses.

# Facts and Procedural History

Keyes and Davine Harding began dating in 2015, and he moved into her home in Indianapolis. They lived a few blocks away from Davine's mother, Kim Mathes. Davine's sister, Diamond, lived with their mother.

Shortly before midnight on September 8, 2015, Davine was sitting on Mathes's front porch with Diamond when Keyes approached. He was angry and grabbed Davine by her shirt. Keyes and Davine walked away while Diamond asked what was wrong. She followed Davine and Keyes and saw Keyes hit Davine, knocking her to the ground.

---

[1] Ind. Code § 35-42-2-1.5 (2014).

[5]    Diamond ran to them and attempted to push Keyes away from Davine with her hands. Keyes pulled out a handgun and hit Diamond in the jaw with the butt of the gun. She fell to the ground, feeling intense pain in her mouth. Diamond got up and ran home, where she found her mother. They went to a neighbor, who called the police.

[6]    Officer Jeffery Newlin of the Indianapolis Metropolitan Police Department was dispatched to the scene. He encountered Mathes and Diamond, who was very upset and had "extensive injuries" to her jaw and teeth in the upper left portion of her mouth. Tr. Vol. I, p. 49. Her mouth was bleeding profusely and she had difficulty talking. Diamond identified Keyes as her assailant, claiming he hit her in the face with the butt of a handgun.[2] Officers were dispatched to Davine's residence. Davine refused to let the officers enter and told them Keyes was not there.

[7]    Meanwhile, Diamond was taken to a hospital. Her jaw was broken and doctors inserted wires to hold her damaged teeth in place. Diamond had recently had braces implanted, and they were damaged. Dr. Carrie Klene examined Diamond and reviewed her file. Dr. Klene estimated that Diamond would have had to have been struck with a force of four or more tons to cause the

---

[2] Keyes claims it is incorrect to say that he hit Diamond with a gun because the jury found him not guilty of charges where the use or possession of a weapon was an element of the offense, and aggravated battery, the charge of which he was found guilty, does not require the use of a weapon. We disagree. Diamond testified that Keyes hit her with a handgun, and Officer Newlin testified that Diamond told him Keyes hit her with a handgun. We do not know the reasons for the jury's decisions, but the not guilty verdicts do not preclude a conclusion that Keyes used a gun to commit aggravated battery against Diamond.

damage to her jaw and teeth. Diamond had to keep the wires in her mouth for a month, during which time she was limited to a liquid diet because she was unable to chew.

[8] On September 10, 2015, Diamond and Mathes went to Davine's home and discovered Keyes was there. They called the police. The police surrounded the residence and demanded that Keyes come out. He came out an hour later, smiling as he surrendered. He told Mathes to "go to hell." *Id.* at 87. A detective examined Keyes and determined he did not have any injuries or marks on his hands. During post-arrest questioning by police, Keyes denied hitting anyone. He also asked a detective what would happen if a witness did not show up to testify at trial.

[9] The State charged Keyes with aggravated battery, a Level 3 felony; battery by means of a deadly weapon, a Level 5 felony; pointing a firearm, a Level 6 felony; and carrying a handgun without a license, a Class A misdemeanor. Prior to trial, Davine gave a recorded statement during which she was interviewed under oath by the State and Keyes. Davine claimed that Keyes pushed her to the ground, but only after she hit him first. In addition, she claimed Keyes hit Diamond in the face with his fist, but only after Diamond attacked him first. Davine also stated that she and Keyes were arguing that day because her mother had told her that Keyes was cheating on her.

[10] Davine did not appear at trial, as we discuss in more detail below. Diamond testified as described above. Keyes testified that Davine hit him and then

Diamond jumped on his back, causing him to hit Diamond with his fist in self-defense. The jury determined Keyes was guilty of aggravated battery and not guilty of the remaining charges. The court entered a sentence, and this appeal followed.

## Discussion and Decision

## I. Denial of Request to Reopen Record

Keyes argues that the trial court should have reopened the record to allow him to present the transcript of Davine's pretrial statement because she failed to appear at trial. The State responds that the court acted well within its discretion in denying Keyes's request because he could have offered the transcript during his case in chief.

The decision to reopen a case is within the discretion of the trial court, and the decision will be reviewed only to determine whether there has been an abuse of discretion. *Moss v. State*, 13 N.E.3d 440, 446 (Ind. Ct. App. 2014), *trans. denied*. We will not set aside the trial court's ruling unless we find that it was unreasonable considering all of the attendant circumstances. *Walker v. State*, 587 N.E.2d 675, 677 (Ind. 1992).

Among the factors to weigh in the exercise of discretion are whether there is any prejudice to the opposing party, whether the party seeking to reopen appears to have rested inadvertently or purposely, the stage of the proceedings at which the request is made, and whether any real confusion or inconvenience would result from granting the request. *Flynn v. State*, 497 N.E.2d 912, 914

(Ind. 1986). A prime consideration, as part of the concept of prejudice to the opposing party, is whether the opposing party has had adequate opportunity to prepare to rebut the evidence offered. *Lee v. State*, 439 N.E.2d 603, 604 (Ind. 1982).

[14] The State, but not Keyes, subpoenaed Davine to appear at trial. On the first day of trial, before the jury was selected, Keyes asked for a continuance, claiming he had reason to believe Davine would not appear in court that day. Keyes further stated that he had requested a subpoena for Davine that morning. The State objected to Keyes's request for a continuance, noting that he could have subpoenaed Davine well before trial. The court denied the motion for continuance.

[15] On the second day of trial, Davine did not appear. After the State rested, Keyes asked the court to issue a body attachment for Davine. The court denied Keyes's request, determining that although counsel for Keyes had attempted to serve Davine with the subpoena multiple times, there was no proof she was aware of the subpoena. Keyes then asked for a continuance or recess, which the court denied.

[16] Next, Keyes testified in his own defense. While he reviewed an exhibit, the court called the attorneys to the bench. Out of the jury's hearing, the court told the parties a paralegal had called to say he had found Davine, but she refused to come to court even though court staff told her she had to testify.

[17] After the parties rested but before closing arguments or final instructions were given to the jury, Keyes asked that the transcript of Davine's recorded statement be admitted as evidence. The trial court declined to reopen the case, stating:

> Okay. I appreciate your argument. And here's - here's what I'm thinking. I called counsel to the bench during the Defendant's testimony while he was reading this - the transcript of his conversation with the detective. So he was reviewing that and I called you all up to the bench and show you this note, which says: D, meaning Davine, is not coming and will not get in Dan's, paralegal's car. He did say she's smoking week [sic], all right. So I shared that with you all. And then from then [sic], you finished cross and redirect and questions from the jury. And at no time did you - and I saw Mr. Bailey come into the court before that was - before you rested. At no time did you ask me then for a bench warrant for her explaining to me that she had been at this point subpoenaed. I might have been concerned about her ability to testify knowing that she was smoking week [sic] apparently. But at that point I think might have been when I could have allowed a bench warrant, and then if you could get her here fine. But you've rested. We went on with rebuttal and we're done, okay.

Tr. Vol. II, p. 312.

[18] Applying the law to these facts, we cannot conclude the trial court abused its discretion in denying Keyes's request to reopen the case. The court correctly noted Keyes was notified before ending his case-in-chief that Davine would not come to trial, but waited until after he had rested, the State had presented its rebuttal evidence and rested, and the jury was sent to lunch, to ask to reopen the case and submit the transcript to the jury. It thus appears Keyes rested his case purposefully rather than inadvertently. In addition, Keyes had not subpoenaed Davine prior to trial, which might have provided earlier notice that

she did not intend to come to court and would have allowed the court to address her defiance in a more efficient manner.

[19] Further, the State would have been unduly prejudiced by reopening the case to admit the transcript of the statement as evidence because Davine was not present to be questioned about her assertions in the statement. The State questioned Davine during her statement, but there are obvious differences in the questions a party might ask during discovery and the questions to be asked at trial. In addition, it was unclear whether Diamond, the State's key witness, was present on the second day of trial to challenge Davine's statement. It would have been inconvenient to ask her to return to rebut the statement.

[20] Keyes correctly states that, in general, a party should be afforded the opportunity to reopen its case to submit evidence which could have been part of its case-in-chief. *Gorman v. State*, 463 N.E.2d 254, 257 (Ind. 1984). In this case, Davine's statement could not have been part of Keyes's case-in-chief because the statement contains hearsay. Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Ind. Evid. R. 801(c). In general, hearsay is not admissible as evidence. Ind. Evid. R. 802.

[21] In the statement, Davine explained her mother told her that Keyes was cheating on her and that her mother did not like Keyes because Keyes told her mother's boyfriend that her mother was cheating on him, both of which are hearsay. At trial, Keyes argued these statements could be admitted, not for the truth of the matter asserted, but instead to show Davine's motive to fight with Keyes.

Davine and Mathes did not testify at trial, so those statements are irrelevant to prove motive as to them. Diamond testified at trial, but there is no indication in Davine's statement that Diamond was aware of any allegations of cheating and thus it would not have been probative of Diamond's motives. We cannot conclude the statement could have been admitted into evidence as part of Keyes's case-in-chief. The trial court did not abuse its discretion in denying Keyes's request to reopen its case. *See Flynn*, 497 N.E.2d at 915 (no abuse of discretion in denying defendant's motion to reopen case; defendant purposefully rather than inadvertently rested its case and reopening the case could have inconvenienced State's witnesses); *Owen v. State*, 269 Ind. 513, 523, 381 N.E.2d 1235, 1241 (1978) (no abuse of discretion in denying defendant's motion to reopen case where evidence defendant sought to present was inadmissible hearsay).

## II. Limitation of Keyes's Testimony

[22] Keyes argues the court should have allowed him to testify that Mathes told Diamond and Davine that he was cheating on Davine. The State responds that such testimony was inadmissible and properly excluded.

[23] A trial court has broad discretion to admit or exclude evidence. *Wilson v. State*, 39 N.E.3d 705, 712 (Ind. Ct. App. 2015), *trans. denied*. We will disturb the trial court's ruling only if the ruling amounts to an abuse of discretion, meaning the court's decision is clearly against the logic and effect of the facts and circumstances or if it is a misinterpretation of the law. *Id.*

[24] Prior to trial, the State filed a motion in limine asking the court to forbid Keyes or his witnesses from mentioning, among other topics: "That prior to [the] incident in question the victim Diamond Harding and defense witness Davine Hardin's [sic] mother Kim Mathes told Diamond and/or Davine Harding that the Defendant was cheating on Davine Harding." Appellant's App. p. 45.

[25] The court granted the State's motion without a hearing, but on the first day of trial, Keyes and the State presented argument on the motion. The court reaffirmed its decision to grant the State's motion. On the second day of trial, Keyes filed a motion to reconsider the granting of the State's motion in limine, and the court denied the motion to reconsider.

[26] During Keyes's testimony, he was asked why he and Davine were arguing on September 8, 2015. The State objected, and the trial court sustained the objection, determining that the basis of the dispute was "not relevant." Tr. Vol II, p. 279. Keyes did not make an offer of proof to present his view of why he and Davine were fighting, but based on Keyes's prior arguments to the trial court related to the motion in limine, he apparently would have testified they were fighting because Mathes had told Davine and Diamond that Keyes was cheating on Davine.

[27] Keyes argues the evidence that Mathes told Davine and Diamond that he had cheated on Davine was relevant to show Diamond's motive or bias. "Evidence that a witness has a bias, prejudice, or interest for or against any party may be used to attack the credibility of the witness." Ind. Evid. R. 616. The State

responds that the evidence was irrelevant and was also hearsay. Keyes rejects the State's hearsay claim, arguing that he would not have testified to what Mathes said to prove the truth of the statement. Instead, Keyes says his testimony about her statement would have been offered to show the effect it had on Davine and Diamond, that is, that they became angry and attacked him without provocation. An out-of-court statement that is offered to show its effect on the hearer's state of mind is not hearsay. *Whited v. State*, 645 N.E.2d 1138, 1140 (Ind. Ct. App. 1995).

[28] We conclude the exclusion of Keyes's testimony was at best harmless error. Even if the trial court's decision to admit or exclude evidence was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Wilson*, 39 N.E.3d at 712. An error will be found harmless if its probable impact on the jury, considering all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. *Id.*

[29] Here, the evidence supported the State's case. Diamond described Keyes's attack in detail. In addition, the medical evidence and the photographs of her injuries support Diamond's version of events rather than Keyes's claim that he reached around and hit her with his fist while she was on his back. The amount of force needed to inflict Diamond's injuries was substantial – equivalent to four or more tons. Also, Keyes defied police orders to leave Davine's home for over an hour and laughed as he was arrested. At the time of his arrest, he had no marks on his hands. Later, Keyes told a detective that he had not hit anyone, contradicting his subsequent claim of self-defense. Furthermore, Keyes

described his version of the altercation to the jury. He claims he should have been allowed to fully discuss the circumstances of the incident, but Diamond did not attempt to explain why Keyes was angry on the night in question. Instead, she merely described the attack. The exclusion of Keyes's testimony was harmless error. *See Whited*, 645 N.E.2d at 1140 (exclusion of witness statements was harmless error; the victim's testimony, with additional medical evidence, supported her version of the attack and defendant presented his theory of the case).

# Conclusion

[30] For the reasons stated above, we affirm the judgment of the trial court.

[31] Affirmed.

Brown, J., and Altice, J., concur.